MOTOR INVESTMENT COMPANY V. CITY OF HAMLIN.

No. A-50. Decided March 29, 1944.
Rehearing overruled April 26, 1944.
(179 S. W., 2d Series, 278.)

*Irion & Cain*, of Dallas, for petitioner.

It was error for the Court of Civil Appeals to hold that the lien was void as against a third party respondent because the motor vehicle was exposed to sale in the usual course of business. It was also error in holding that the respondent was not charged with notice that lien was recorder upon manufacturer's certificate at time of "first sale" to the city. Commercial Credit Co. v. American Mfg. Co., 155 S. W. (2d) 834; Gaddes v. Terrell, 101 Texas 574, 110 S. W. 249; Meed v. Wheeler, 135 Texas 454, 144 S. W. (2d) 885; Service Fiinance Corp. v. Singleton, 166 S. W. (2d) 98.

*Jas. D. O'Connor*, of Dallas, for respondent.

MR. CHIEF JUSTICE ALEXANDER delviered the opinion of the Court.

This is a suit on a note and to foreclose a mortgage lien on an automobile or fire truck. The suit involves the construction of the automobile "Certificate of Title Act" (Vernon's Anno. P. C., Art. 1436-1, Acts 1939, 46th Leg., p. 602.)

Ford Motor Company manufactured and sold to Elkins Motor Company, an automobile dealer, an automobile truck chassis

with motor and cab, and delivered to said dealer a "manufacturer's certificate" covering same. Elkins Motor Company sold the truck to Simplex Fire Apparatus Company of Dallas, a concern owned and operated by R. M. Hedrick, or his company. On November 4, 1940, Hedrick, or his company, borrowed from J. Earl Presley the sum of $876.00 for use in paying the balance of the purchase price of the truck. Hedrick's indebtedness for this money was evidenced by note with chattel mortgage on the truck, and simultaneously therewith Presley noted a mortgage lien therefor in the margin on the back of the manufacturer's certificate opposite the "First assignment" blank in the following language: "Nov. 4, 1940. The motor vehicle herein described is mortgaged to J. Earl Presley, 2201 Commerce Street, Dallas, Texas, for $876.00," with a diagonal arrow drawn across the "First assignment," pointing to the notation on the margin. Thereafter, Presley returned the certificate to Hedrick, and forthwith, on November 10, 1940, filed the chattel mortgage in the office of the County Clerk of Dallas County, Texas. On March 22, 1941, Hedrick made, executed, and delivered to Presley his further mortgage as a renewal and extension of the first mortgage covering the truck chassis, and in addition recited "Any and all equipment attached thereto or built thereon." At the time of these transactions Hedrick, or his company, was engaged in the business of manufacturing trucks of this kind into fire fighting apparatuses by equipping them with hose, hose rack, pump, and other incidental equipment, and reselling them to consumers. After having so converted the automobile into a fire truck, Hedrick advertised it for sale. Thereafter he took it in a convoy van to the City of Hamlin in Jones County, Texas, and here exhibited it to the City of Hamlin for sale. Hendrick advised the City that the truck was clear of liens and that he had the manufacturer's certificate, but did not have it with him. Relying upon such representations the City purchased the truck at a cash price of $3,500.00 and received the truck. The City had no actual knowledge of Presley's lien at the time it purchased the truck. Presley afterwards assigned his note to Motor Investment Company.

Motor Investment Company brought this suit against J. Earl Presley and R. M. Hedrick for its debt, and against said two defendants and the City of Hamlin for foreclosure of its lien on the fire truck. The trial was without a jury. Judgment was for the plaintiff for its debt and for foreclosure of its lien as against all parties. The City of Hamlin alone appealed. The Court of Civil Appeals by majority opinion, Justice Young dissenting, reversed the judgment of the trial court, and denied the

plaintiff any foreclosure as against the City of Hamlin. 177 S. W. (2d) 101.

■ The facts of this case are in some respects the same as were involved in the case of Motor Investment Company v. Knox City, 141 Texas 530, 174 S. W. 482. Pertinent provisions of the Act in question were set out in the opinion in that case and need not be repeated here.

Under the facts of this case Ford Motor Company was a "Manufacturer" as provided in Section 16 of the Act, and Elkins Motor Company was a "Dealer" within the provisions of Section 19 thereof. Hedrick was either a "Manufacturer," as defined in Section 16, or a "Dealer," as defined in Section 19, and was not an "Owner," as defined in Section 4 thereof. Consequently the transfer of the vehicle from Ford Motor Company to Elkins Motor Company, and from Elkins Motor Company to Hedrick, and from Hedrick to the City of Hamlin each and all constituted a "First sale" within the meaning of the Act, and up to that time no certificate of title was necessary to the validity of such sale. Liens created against the vehicle up to and including the sale to the City of Hamlin could be preserved by noting same on the manufacturer's certificate, as provided for in Section 41 of the Act. See Motor Investment Co. v. Knox City, supra.

Since the lien held by Motor Investment Company was noted on the manufacturer's certificate as provided for in Section 41 of the Act, it was valid as against the City of Hamlin, unless it can be defeated under one of the contentions hereinafter noted.

■ Revised Statutes Article 4000 reads as follows:

"Every mortgage, deed of trust, or other form of lien attempted to be given by the owner of any stock of goods, wares or merchandise daily exposed to sale, in parcels, in the regular course of business of such merchandise, and contemplating a continuance of the possession of said goods by said owner, shall be deemed fraudulent and void; provided that this Article shall not apply to farm products when offered for sale by the producer." (Acts 1879, p. 60; G. L. vol. 8, p. 1360; Acts 1935, 44th Leg., p. 302, ch. 115, sec. 1.)

The Court of Civil Appeals in its majority opinion held that at the time of the sale to the City of Hamlin, Hedrick had exposed the vehicle to sale in the regular course of business

as a part of a stock of merchandise within the meaning of the above Article, and hence the purported lien was void as to the City of Hamlin, who purchased for cash and without notice. There is no statement of facts in the record. The trial court, however, made the following finding on the issue in question:

"The facts do not indicate as a matter of law that the vehicle in question was daily exposed for sale, but to the contrary indicate that this particular vehicle was hauled to the City of Hamlin on a convoy and demonstrated to the City of Hamlin and thereupon a contract for the sale to the City of Hamlin of a completed fire truck was entered into without describing the vehicle in question."

. This finding is insufficient to support the conclusion reached by the Court of Civil Appeals, wherein it concluded that the vehicle was daily exposed to sale by Hedrick in the regular course of business as a part of a stock of goods within the meaning of the above statute.

However, we think the result would be the same if the vehicle had been so exposed to sale as contemplated by said statute. Article 4000, above quoted, except for the last proviso, was enacted in 1879. Its scope was limited to a certain extent by the enactment of Revised Statutes Article 5497a, which reads as follows:

"That all chattel mortgages hereafter given as security for money advanced for the purchase of motor vehicles shall, when registered as required by law of chattel mortgages, be and are superior to the claim or claims of other creditors even though such motor vehicle or vehicles are daily exposed for sale. Provided, however, any such chattel mortgage shall be void as bona fide purchasers when such motor vehicles are daily exposed for sale." (Acts 1933, 43rd Leg., 305, ch. 117.)

■ The question remaining to be determined is whether the scope of Article 4000 has been further limited by the Certificate of Title Act so as to make it inapplicable altogether to motor vehicles as defined in the Act. We have concluded that it has been so limited.

The Act in question is a special law dealing with motor vehicles only. Section 1 thereof provides in part as follows:

"* *. * in the enactment hereof it is hereby declared to be the legislative intent and public policy of this State to lessen and prevent the theft of motor vehicles, and the importation into

this State of and traffic in stolen motor vehicles, and the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle or the tires, radios, parts, or appliances thereof stands as security, and the provisions hereof, singularly and collectively, are to be liberally construed to that end. * * *"

The Emergency Clause further declares:

"* * * the fact that an early adoption of this Act will operate to material'y safeguard dealing in motor vehicles and using the same as security * * * create an emergency * * *."

The Act defines in detail the steps to be taken for the transferring or fixing of liens upon such motor vehicles both during the "first sale" period while the vehicle is in the hands of the manufacturer, importer, or dealer, and before a certificate of title is required to be issued, as well as during the "subsequent sale" period after the vehicle has passed into the hands of the consumer. The obvious purpose of the Act is to cover the whole field of sales and liens upon such motor vehicles. It carries the usual provision that "All Acts or parts of Acts inconsistent with the provisions of this Act are hereby repealed."

In 39 Texas Jurisprudence 138, the rule of statutory construction is thus stated:

"Where it is apparent that a statute is intended to embrace all the law upon the subject with which it deals, it repeals all former laws relating to the same subject. Under this rule, a statute that covers the subject matter of a former law and is evidently intended as a substitute for it, although containing no words to that effect, operates as a repeal of the former law to the extent that its provisions are revised and its field freshly covered. Accordingly, parts of the original Act that are omitted from the new legislation are to be considered as annulled. If the later act is clearly intended to prescribe the only rules which should govern, it repeals the prior statute, although the two are not repugnant in their provisions."

In keeping with the above rule the Fort Worth Court of Civil Appeals in the case of Commercial Credit Company, Inc. v. American Manufacturing Company, 155 S. W. (2d) 834, held that the Certificate of Title Act repealed the registration laws pertaining to chattel mortgages in so far as they related to "motor vehicles" as defined in the Act. This Court refused writ of error in that case. For the same reason we think that the Certificate of Title Act repealed the provisions of Article 4000 and 5497a in so far as they pertain to such "motor vehicles."

Our view in this respect is strengthened by the provisions of Section 45 of the Act, which reads as follows:

"Exposure for sale of any motor vehicle by the owner thereof with the knowledge or consent of any mortgagee shall not affect the rights of any mortgagee as against all third parties."

■ If this provision is broad enough to cover motor vehicles owned and exposed for sale by dealers, then it is directly in conflict with the provisions of Articles 4000 and 5497a, and necessarily repeals or limits the effect of these earlier statutes to that extent. It is true that Section 45 deals with motor vehicles exposed for sale by the "owner thereof," and the word "owner," as used in its technical sense, as defined in Section 4 excludes manufacturers and dealers. But we are of the opinion that in this instance the Legislature uses the phrase "owner thereof" in the broad or generally accepted sense, and that the section in question was intended to apply to every motor vehicle exposed to sale by the one to whom it belongs, regardless whether he be manufacturer, importer, or dealer, or a consumer who has acquired his interest therein after the first sale. We hold that the Certificate of Title Act repealed the provisions of Articles 4000 and 5497a in so far as they pertain to "motor vehicles."

The Court of Civil Appeals was also of the opinion that at the time of the creation of the lien in question Hedrick was engaged in rebuilding and assembling motor vehicles within the meaning of Section 37 of the Act, and was therefore required to obtain a certificate of title before the lien could be fixed on the fire truck. We are not in accord with this view.

Sections 16 and 37 of the Act read as follows:

"Sec. 16. The term 'Manufacturer' means any person regularly engaged in the business of manufacturing or assembling *new* motor vehicles, either within or without this State." (Italics ours.)

"Sec. 37. (a) When any motor vehicle registered or licensed in Texas to which a certificate of title has been issued is junked, dismantled, destroyed, or its motor number changed or the motor vehicle changed in such manner that it loses its character as a motor vehicle, or in such manner that it is not the motor vehicle described in such certificate of title, the owner named last in the certificate of title shall surrender the certificate of title to the Department together with the written consent of the holders of all unreleased liens noted thereon, and the cer-

tificate shall be cancelled on the records of the Department. Provided that nothing herein shall affect the sale of used parts for automobiles when sold as such.

(b) Any person rebuilding or assembling a motor vehicle, shall, before using same or operating same, or permitting the operation of same, or disposing of same, procure a certificate of title for same from the Department. For the purpose of obtaining any such certificate of title said person shall furnish an affidavit setting forth where, when, and how, and from whom he procured the various respective parts used in the rebuilding or assembling of such motor vehicle for which certificate of title is sought; provided, however, that the Department shall not issue such certificate of title unless and until it has satisfied itself that the facts set forth are true and correct, and that the person making the affidavit is in fact the person purported in such affidavit to be the maker thereof."

■ It is very clear, we think, that Section 37 applies only to one who rebuilds or assembles a motor vehicle by the use of parts obtained in whole or largely from previously used motor vehicles. On the other hand, Section 16 applies to those who manufacture or assemble *new* motor vehicles. The facts recited in the court's findings of fact show very clearly that Hedrick came within the provisions of Section 16, and was therefore a "manufacturer" in that he was manufacturing or assembling new vehicles, and it was not necessary for him to procure a certificate of title before he could fix a lien on the truck.

■ It is true that plaintiff drew the legal conclusion in his pleadings that Hedrick was regulated by Section 37 of the Act. In this connection plaintiff alleged as follows:

"On or about October 22, 1940, defendant, R. M. Hedrick, was a manufacturer in that said defendant would acquire the cab, engine and chassis of a motor vehicle or truck and proceed to rebuild or assemble thereon fire apparatus consisting of a booster tank, hose rack and hose and other equipment incidental to a fire truck. The said R. M. Hederick was thereby a person rebuilding or assembling a motor vehicle as regulated by Subsection (b) of Section 37 of Article 1436, Title 17 of the Penal Code of the State of Texas."

However, the facts alleged in the above paragraph of the petition, as well as the findings made by the trial court, show that Hedrick was a manufacturer within the meaning of Section 16 of the Act. The allegation that Hedrick was "thereby a

person rebuilding or assembling a motor vehicle as regulated by Subsection (b) of Section 37 of Article 1436, Title 17 of the Penal Code of the State of Texas," was merely the legal conclusion of the pleader drawn from the facts previously alleged. A pleader is not concluded by averments of legal inferences if such inferences are repugnant to the true legal conclusions to be drawn from the state of facts alleged in the same pleading. 41 Am. Jur. 436, sec. 201; 31 C. J. S. 1072, sec. 301; Reynolds v. Porter (Texas Civ.App.), 54 S. W. (2d) 1086.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered March 29, 1944.

Rehearing overruled April 26, 1944.