**BALL BROS. TRUCKING CO. et al. v. SORENSON et al.**

No. 14739.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 7, 1945.

Rehearing Denied Jan. 25, 1946.

Mack Taylor, of Fort Worth, for appellants.

D. A. Webb, of Fort Worth, for appellees.

BROWN, Justice.

Buchanan Motors of Wichita, Kansas, on May 10, 1944, was the owner of a certain 1941 Ford Station Wagon and on said date obtained a certificate of title thereto from The Kansas State Highway Commission.

On the certificate there is prepared a "blank" to be used if the certificate of title is assigned by the owner, and it appears that in June, 1944, Buchanan Motors assigned such certificate to one Harley Dawdy, whose home town and street address are shown in the assignment to be: 615 Florence Street, Fort Worth, Texas. The assignment, made under oath, recites that there are no liens against the vehicle named.

At about the same time Dawdy purchased the vehicle, he procured a loan on same from Capitol Securities Company, a partnership firm composed of Michael and Emil Sorenson, in the sum of $728.92 and executed a promissory note in such amount and a chattel mortgage on the vehicle to secure the debt.

In the body of the mortgage, Dawdy gave his name as H. A. Dawdy and his residence as the City of Topeka, in Shawnee County, Kansas. The Kansas Certificate of Title Law provides, and there is printed on the certificate of title that was assigned to Dawdy, that: "The new owner must make application for new certificate of title and registration immediately to the County Treasurer of the County where the owner resides." This Dawdy either negligently or purposely did not do. Instead, Dawdy immediately brought the vehicle to the State of Texas as an "importer" and on July 24, 1944, he executed a "certificate" which is required by the law of Texas in which he described the vehicle and set forth that there

were no liens against it, although the Texas law requires the "importer" to describe in detail any and all liens then existing against such a vehicle. The "certificate" was sworn to by Dawdy, and he immediately applied to the Tax Collector of Tarrant County, Texas, for a Texas Certificate of Title.

In such application, Dawdy described the vehicle, stated that he was the owner and had purchased it from Buchanan Motors of Wichita, Kansas, and he left entirely blank that portion of the application that provides for a disclosure of such liens as were against the vehicle. Dawdy made such application under oath and stated that there were no liens against the vehicle except those shown in the application.

As an evidence of ownership, Dawdy exhibited to said Tax Collector the assigned Kansas Certificate of Title, and the Tax Collector endorsed the following on the application: "The following evidence of ownership, Kansas Title having been presented to me, I have therefore approved the above application and recommend that the Texas Highway Department issue a certificate of title to the applicant for the above described vehicle and I have issued to applicant Receipt No. 34688."

On the same day Dawdy made the following assignment of same: "The certificate of title herein applied for is hereby assigned to Ball Bros. Trucking Co., 7–24–44, who has this day purchased the said vehicle."

On the "importer's" certificate that Dawdy made in Texas appears the following: "Important: If this motor vehicle is imported from a state operating under a Title Law, the out of state certificate of title or a duplicate must be surrendered, or Texas title will NOT issue. No exceptions. Any recorded lien on the out of state title must be released or carried forward on Texas application." Ball Bros. Trucking Co. signed the "importer's" certificate as the "purchaser" of the vehicle.

In this state of affairs and under these facts and conditions the State Highway Department of Texas issued a certificate of title to Ball Bros. Trucking Co., dated August 16, 1944, which certificate discloses that there is a lien against the vehicle in favor of Motor Investment Co. of Fort Worth, Texas, in the sum of $762.00.

This debt and lien were made and given by Ball Bros. Trucking Co. on July 25, 1944.

The said Kansas lien owners and holders having lost sight of the vehicle and not knowing that Dawdy had transported it to Texas, and its debt being past due and unpaid, in some way learned that Dawdy was not in Kansas, but was in Texas and that the vehicle was likewise in such state, and brought this suit for debt and a foreclosure of its existing and properly recorded lien created in Kansas and made all the parties named as being connected with the vehicle through the above-stated transactions, defendants.

Trial being had to a jury, on special issues, the following findings were made (in substance): (1) That Dawdy is indebted to Capitol Securities Company in the sum of $728.92; (2) that Dawdy executed the chattel mortgage lien to secure such indebtedness, as contended for by plaintiffs; (3) that Dawdy's sworn statement, in his Importer's Certificate, that there were no liens against the vehicle was false; (4) that Dawdy's sworn application for a certificate of title, containing a like statement was false; (5) that Dawdy was a resident of the City of Topeka, in Shawnee County, Kansas, when he executed the note and mortgage; (6) that the plaintiffs did not know that Dawdy was taking the vehicle out of Kansas; (7) that the Balls paid a valuable consideration for the vehicle; (8) that the Balls did not know of the existence of plaintiffs' lien when they purchased the vehicle; (9) that Motor Investment Co. made an actual loan to the Balls, and (10) that when such loan was made the said company had no actual notice of plaintiffs' lien.

Ball Brothers and said Investment Company made motions for judgment "on the verdict," but we find no order in the Transcript showing any action had by the trial court thereon.

The plaintiffs made a motion for judgment and judgment was entered for them, as prayed for, but we do not find in the record any order sustaining the motion for judgment.

The defendants the Balls and Ball Bros. Trucking Co., and Motor Investment Company duly filed an original and amended motion for a new trial, and the amended motion being overruled they have appealed and have given a supersedeas bond.

The judgment is so lengthy that we believe only the substance should be given, namely, the plaintiffs' debt and lien is found and established, and it is found that same

are superior to any right or claim made by the defendants, and an order of sale is awarded directing the officer to seize and sell the said mortgaged vehicle to satisfy plaintiffs' debt of $795.80 and if the property cannot be found, that such sum be made out of any property belonging to Ball Bros. Trucking Company.

All points bottomed on assignments of error Nos. 1, 3, 5, and 7 may not be considered by us. These assignments of error complain of the trial court overruling a motion made by the defendants for judgment "based on the verdict." No such motion or motions are shown to have been acted upon by the trial court.

Appellants have first set forth eight (8) assignments of error, and then they present eight (8) "points." We take up these "points" in due order. The first point asserts that "A purchaser of an automobile who received from the seller an application for a certificate of title, under Article 1436—1, supported by evidence approved by the 'designated agent' is entitled to have issued in his (purchaser's) name a valid certificate of title." This is said to be germane to assignments of error Nos. 1, 2, and 3.

Assignment of error No. 2 asserts that the trial court erred in entering judgment because the jury found that appellants were innocent purchasers for value of the vehicle in question and as a matter of law appellants took title to the vehicle without any liens. Point 2 asserts: "The finding of a fact by an administrative officer within the province delegated to him is binding upon the courts, in the absence of caprice, if based upon evidence satisfactory to him." This is said to be germane to said assignments Nos. 1, 2, and 3.

Point 3 asserts: "The acts of an administrative officer, within the scope of his authority and acting in quasi-judicial capacity, is binding upon the courts."

Point 4 asserts: "The Certificate of Title Act is a registration act and the established law applicable to notice, constructive and actual, is applicable to vehicles registered thereunder."

This is said to be germane to assignments Nos. 1, 2, 3, and 4.

Assignment No. 4 asserts that the trial court erred in entering judgment for appellees because the evidence failed to show that appellees had exhausted their administrative remedy provided by law, in that they failed to apply to the State Highway Commission for a suspension or revocation of the certificate of title shown to have been issued as provided by Vernon's Annotated Penal Code of Texas, Article 1436—1, Sections 38 and 39.

Point 5 asserts: "A chattel mortgage duly filed and recorded in another state against innocent purchaser for value is void though removal was without the knowledge or consent of the mortgagee, and there was no negligence on his part in failing to ascertain fact of removal."

This is said to be germane to assignments 1, 2, 3, and 7.

Point 6 asserts: "Before a suit may be brought under Article 1436—1 for the purpose of foreclosing a lien on an automobile for which there is outstanding a certificate of title reflecting no lien, it is necessary that the mortgagee apply to the State Highway Department for a revocation or suspension of such certificate of title, and it is necessary in such suit that the mortgagee plead and prove refusal of the State Highway Department to correct such certificate."

This is said to be germane to assignment No. 4.

Point 7 asserts: "The trial court committed reversible error in submitting special issues Nos. 1 to 26 inclusive, because under the law there was nothing to submit to the jury."

This is said to be germane to assignments Nos. 7 and 8.

Assignment No. 8 asserts that the court committed reversible error in submitting the (case?) to the jury over the objection of the appellants' special issues, upon which there was no dispute, and upon which the evidence was uncontradicted; and which special issues were themselves a collateral attack on a judgment of the State Highway Department.

Point 8 asserts: "The proper method of proving the law of a sister state is to offer in evidence of the law purported to have been printed under the authority of such state."

This is said to be germane to assignment No. 6 and such assignment asserts that it was fundamental error for the court to permit the witness, Michael Sorenson, a layman, to testify that appellees had complied with the law of the State of Kansas, with respect to the registration of the alleged

mortgage from Dawdy to Capitol Securities covering the automobile in question.

We have set forth the "points" and the substance of the assignments of error on which they are asserted to have been "based," in order to give a word picture of the nature of the defense made and the basis of the appeal.

The Certificate of Title Act involved in the case at bar is Article 1436—1 of the Penal Code of Texas, and the Legislature declared in Section 1 of the act that "in the enactment hereof it is hereby declared to be the legislative intent and public policy of this State to lessen and prevent the theft of motor vehicles and the importation into this State of, and traffic in, stolen motor vehicles, and the sale of encumbered motor vehicles without the enforced disclosure to the purchaser of any and all liens for which any such motor vehicle stands as security, and the provisions hereof, singularly and collectively, are to be liberally construed to that end."

To give the construction and make the application contended for by appellants in this case would encourage those who are willing to do the unlawful things that were done in the case before us and to commit the crimes that were committed by the person who undertook to "import" the vehicle into Texas for resale.

The very law, on whose provisions appellants seem to rely for immunity, was enacted to prevent the doing of the acts that were done by Dawdy in an effort to conceal the fact that there was a valid and just lien indebtedness against the motor vehicle which he had personally created.

This court may take judicial notice of the fact that there are several sister states whose boundaries put them "next door neighbors" to Texas and that one may drive an automobile from any one of these "next door" states into Texas in a very few minutes and from several more states into Texas in a very few hours; and everyone knows that no state is more than a few days drive distant from any state in the Union.

The Legislature had this in mind and had knowledge of the unlawful traffic in motor vehicles that has grown up with the laying of good roads and the manufacture of millions of motor vehicles.

We are not disposed to hold that a mortgagee, who has a valid and subsisting debt, secured by a lien created in the state of residence of the mortgagee and duly recorded under the law of such state, has the burden of keeping his eye on the movements of the motor vehicle in order to ascertain into what state or into what county, in any such state or states, the vehicle has been carried. Nor that such mortgagee is compelled to file a copy of his mortgage in the state where the vehicle was carried, under such circumstances as appear in the case before us, in order to prevent the loss of his lien.

The record before us discloses that Dawdy moved fast in order to get this mortgaged vehicle into Texas and adopt the unlawful means used by him to make it appear that there was no lien against it.

The trial court found that the failure of Dawdy to obtain a certificate of title in Kansas and his presentation of only an assignment of a certificate of title issued by the State of Kansas, when he applied to the Tax Collector of Tarrant County for a certificate of title under the Texas Law, and when he falsely swore that there was no lien against the vehicle, in the light of the Texas Law, put those who dealt with him and with the vehicle involved on notice of any valid, recorded mortgage lien plaintiffs had as shown by the records in Shawnee County, Kansas, and that the purported sales and attempted transfers, wholly failed to comply, as a matter of law, with the Texas Certificate of Title Act, and same were void and not binding on the plaintiffs.

So far as we are able to see the case before us, we see no difference, in principle, between the unlawful and felonious acts of Dawdy, in attempting to make it appear that this vehicle was not burdened with a lien, in order to sell it for his advantage and that of one who brings a stolen vehicle into Texas, and through some fraudulent and felonious act, sells or mortgages it.

We will only notice the Texas cases that are cited by appellants in support of their contentions, since we are dealing with a comparatively new Texas Law, the provisions of which appellants invoke as a defense.

An examination of Commercial Credit Corp. v. American Mfg. Co., Tex.Civ.App., 155 S.W.2d 834, Dublin National Bank v. Chastain, Tex.Civ.App., 167 S.W.2d 795, and Motor Investment Co. v. City of Hamlin, 142 Tex. 486, 179 S.W.2d 278, do not, in our opinion, give any comfort to appellants.

912

In the light of the Texas Law, on which this suit is bottomed, we specifically decline to follow the harsh rule laid down by the Supreme Court of Texas, in 1921, as disclosed in the opinion in Consolidated Garage Co. v. Chambers, 111 Tex. 293, 231 S. W. 1072.

We hold that it is the plain duty of one who either purchases or lends money on a motor vehicle "imported" into Texas, to see to it that the seller or mortgagor has complied with the Texas Certificate of Title Law, and this the appellants did not do. Being derelict in that duty they acted at their peril.

We have stated the points and assignments of error on which appellants rely; a reading of them, in the light of the Texas Law as we view and understand it, convinces us that there is no merit in any point or assignment of error and they are by us overruled and the judgment of the trial court is affirmed.