## COMMERCIAL CREDIT CORPORATION v. HARRIS.
### No. 15103.

Court of Civil Appeals of Texas.
Fort Worth.
Feb. 10, 1950.

See also, Tex.Civ.App., 225 S.W.2d 247.

D. A. Webb, of Fort Worth, for appellant.

Seaberry & Hagman and Ben J. Hagman, all of Weatherford, for appellee

SPEER, Justice.

This is an appeal from the County Court of Parker County by Commercial Credit Corporation, a Texas corporation, on an adverse judgment entered in a nonjury case in favor of appellee, J. H. Harris.

Appellee sued and recovered a money judgment against appellant based upon an alleged conversion by appellant of a described second-hand 1940 model Chevrolet automobile in Parker County, Texas. There are many conflicts in the testimony as to matters which we consider immaterial in a proper disposition of this appeal.

We have concluded that the controlling factors, about which there appears no dispute, present a question of law and not

of fact and that the trial court erroneously decided the legal questions involved.

The undisputed facts show that William Ray purchased from Cecil L. Suey in Jasper County, Alabama the car in question and procured a bill of sale therefor, showing the consideration paid and that there were no liens on it, under date of November 10, 1948. On the same day Ray executed and delivered to Jasper Hudson Co., a corporation, at Jasper, Alabama, a conditional sales contract, which is a form of combination note and chattel mortgage on the car, securing an indebtedness of $636.72, payable in specified installments, and providing that if Ray defaulted in any installment the mortgagee or its assignee could declare the amount remaining unpaid due and could "without notice retake possession of said car." On the same day, to-wit, November 10, 1948, Jasper Hudson Co., for a valuable consideration, sold, transferred and assigned the debt and lien to Commercial Credit Corporation, a Maryland corporation, with a permit to do business in Alabama. All of said instruments, the bill of sale, mortgage and assignment were timely filed for record as provided by the laws of Alabama.

On January 16, 1949, a man representing himself to be William Ray, on his way from Jasper, Alabama, to California, came to appellee Harris' place of business in Palo Pinto County, Texas, and offered to sell the car to appellee. The car bore an Alabama highway license. Ray had no certificate of title but had the original bill of sale from Cecil L. Suey (above mentioned), showing no liens on the car; he represented to appellee that there were no liens on it. Ray was not an importer of motor vehicles. Appellee made no effort to ascertain whether or not there were any liens shown of record in Walker County, Alabama, the county in which Jasper is located. Appellee called the tax collector of Palo Pinto County to ascertain whether or not Alabama had a certificate of title law or just a bill of sale law, and was satisfied from what the collector told him with the seller's bill of sale from Suey. The tax collector told him the kind of a bill of sale to take from the seller and he either prepared one or had it done and had the seller to execute it as of date January 16, 1949, and appellee paid the seller the agreed consideration. The instrument contained language usually found in such instruments. There was no statement in the instrument about existing liens. Appellee paid the seller, he left on a train and no party to this suit has heard of or from him since the related incident.

After he purchased the car on January 16, 1949, appellee Harris used the car bearing the Alabama license plate until March 8, 1949, when he procured from the Texas Highway Department a certificate of title in his own name, and paid the statutory penalty for delay in applying for a certificate of title. Apparently he accompanied his application with original bill of sale from Suey to Ray, above pointed out, and the bill of sale from Ray, neither of which showed any lien, and made such other representations to the Department as are required by the statutes of this state.

The Alabama lienholder learned that Ray had taken the car out of the state without its knowledge or consent and through the Automobile Underwriters Protective Bureau learned that appellee in Palo Pinto County had the car in his possession. Mortgagee contacted appellant, the, Texas corporation, and advised its officers of the note, its default, the lien and the provision authorizing repossession and instructed appellant to take possession of the car for the Alabama corporation.

Acting as agent for the Alabama lienholder, appellant, through an employee, accompanied by appellee, took the car to Weatherford, Texas for storage under some kind of an agreement, the terms of which are in dispute. However, it is certain that appellant's representative created no disturbance, violated no law and exercised no physical force but in a peaceful manner procured the car to be stored. The storage company issued its customary receipt for the car in the name of appellant as a "repossessed car," and collected the storage charge from appellant. About a week after the car was stored, appellant, upon instructions from the Alabama mortgagee, drove the car from the place of stor-

age to Fort Worth, Texas, and the mortgagee sent an employee from Alabama and took the car back to that state, and in so far as the record shows mortgagee still has it. There is no relation, business, financial or otherwise, between appellant and the Alabama mortgagee, although their corporate names are similar. It is undisputed that appellant had no interest in the car, did not convert it to its own use, received nothing out of it but received only from the lienholder payment for expenses incurred and for services performed.

■ Since 1939, Article 1436–1, Vernon's Penal Code, which article is divided into more than sixty-four sections and subsections, has been in effect in this state. The act is very complete in its detail and covers every step of the way referable to acquiring, owning, operating, buying, selling, mortgaging and otherwise creating liens on motor vehicles. All persons in this state are chargeable with notice of its provisions and must in their dealings be governed thereby. The purposes for which the statute, now classified as a Penal one, was passed, its validity and beneficent effects were set out as some length by this court in Commercial Credit Co. v. American Mfg. Co., Tex.Civ.App., 155 S.W.2d 834, writ refused. It is unnecessary to repeat here what we said in that case. In the cited case the validity of a lien on a vehicle was involved. A purchaser who gave a lien on a car had it recited in the certificate of title, took the car out of the state, procured a certificate of title in another state which showed no lien, returned to Texas and by fraud and false affidavit procured a certificate of title in this state and sold the car to a person who had no knowledge of the original lien. We held the lienholder's rights were superior to that of the last purchaser.

■ In the instant case appellant was sued in tort for wrongfully taking from appellee the automobile under the circumstances herein set out. It is our opinion that appellant acting as agent for the Alabama lienholder did not commit a tort or trespass. If appellant as such agent, acting under the instruction of the lienholder, did no more than its principal was privileged to do, the agent cannot be held liable for its act. 2 Am.Jur., p. 257, sec. 326; 3 C.J.S., Agency, p. 130, § 220 (Torts —Acts of Principal); American Law Institute (Restatement of the Law), Agency, p. 757, sec. 345.

■ We may now well determine whether or not the Alabama lienholder could under its contract lien with Ray take possession of the car. Among other things, Ray's contract with the lienholder provided that "in the event of my default seller or assignee may declare the total amount owing hereunder to be due and payable and without notice retake possession of said car."

It has long been the settled law in this state that in such circumstances the lienholder may without incurring liability peaceably repossess the mortgaged property. Singer Mfg. Co. v. Rios, 94 Tex. 174, 71 S. W. 275, 60 A.L.R. 143, 97 Am.St.Rep. 901.

In Bank of Atlanta v. Fretz et al., Tex. Sup.1950, 226 S.W.2d 843, 845, the Court had for consideration the right of a mortgagee in another state having no "certificate of title" law similar to our own to enforce its lien against a purchaser of a car in Texas which had been brought from that state into this. In a very thorough explanation by the court of the far-reaching effect of our "Certificate of Title Act," it was held that the lienholder in the foreign state lost none of its rights under its contract lien by virtue of the removal of the car from the state without its knowledge or consent and a sale in Texas without a compliance by the seller with our "Certificate of Title Act."

Under the cited authorities and the facts in this case, we conclude that appellant committed no tort or trespass as against appellee and that it was error for the trial court to hold appellant in damages as it did. It is quite obvious that appellee has done no intentional wrong and it may be conceded that he at all times acted in good faith, but it is likewise true that he was amenable to the laws of this state, of which he must take notice and observe to protect his own rights.

The trial court in this case should have denied a recovery for tort as against appellant and it becomes our duty to enter the judgment that the trial court should have entered. We therefore reverse the judgment of the trial court and render judgment for appellant.

Reversed and rendered.