## STATE HIGHWAY DEPARTMENT et al. v. TEXAS AUTOMOTIVE DEALERS ASS'N et al.

### No. 12261.

Court of Civil Appeals of Texas. San Antonio.

April 25, 1951.

Rehearing Denied May 23, 1951.

Price Daniel, Atty. Gen., Dean J. Capp, V. F. Taylor, Asst. Atty. Gen., Irion, Cain, Bergman & Hickerson, Dallas, for appellants.

Pichinson, Davis & Hale, Corpus Christi, Dan Moody, Austin, for appellees.

POPE, Justice.

This is an appeal from a declaratory judgment construing various sections of the Certificate of Title Act, Article 1436–1, Vernon's Penal Code, insofar as they relate to the registration requirements for vehicles imported into Texas for sale.

The Texas Automotive Dealers Association, the Corpus Christi Automobile Dealers Association, and seventeen franchised dealers located in Corpus Christi commenced this suit against the State Highway Department of Texas, the State Highway Commission and its members, and Joe L. Stevens, Tax Assessor and Collector of Nueces County. The Texas Used Car Dealers Association intervened in the suit and urged that the defendants' present construction of the statute is proper. The plaintiffs will be here designated for convenience as Dealers and the defendants and intervener, as the Department. The trial court sustained the views of the Dealers in a declaratory judgment, after they abandoned their prayer for injunctive relief. The trial court held that the Department was improperly construing Article 1436–1 in registering motor vehicles imported into Texas for sale, on the presentation of an importer's certificate rather than a manufacturer's certificate.

The parties stipulated that each plaintiff, except the Texas Automotive Dealers Association, has sustained losses in excess of $500, resulting from the purchase of automobiles with undisclosed liens.

Under the Certificate of Title Act, the presentation of a manufacturer's certificate is required for the registration of a vehicle which is a "new car." As to a vehicle originally shipped and sold to a Texas dealer, despite additional transfers to other dealers, the Department requires registration upon presentation of a manufacturer's certificate. This practice and construction is not under attack. But as to a vehicle originally shipped and sold to a person outside of Texas and then, before registration, imported into Texas for sale, even to a dealer, the Department permits registration upon presentation of an importer's certificate only. The Department does not require a manufacturer's certificate for such imported vehicle. This construction is under attack and the trial court held that the practice was contrary to the meaning of the Certificate of Title Act, and that a manufacturer's certificate is required in that instance also. This result was reached by the trial court's conclusion that the total of all transfers of a motor vehicle prior to registration and the inception of an "owner" constituted a single "first sale." After such single first sale, but not before, the vehicle becomes a "used car" according to the judgment of the trial court.

This appeal turns upon the statutory meaning of "first sale" insofar as that term relates to the "used" nature of cars imported for sale into Texas. Since the Certificate of Title Act has expressly defined its own terms, we are governed by those definitions. To determine this matter it becomes necessary to incorporate the Act's intricate definitions into its various pertinent sections.

Section 29 of the act authorizes registration by means of an importer's certificate. It provides: "No such designated agent shall issue a receipt for a certificate of title to any *used* motor vehicle imported into this State for the purpose of sale within this State without delivery to him by the applicant of an importer's certificate properly assigned by the importer upon [a] form to be prescribed by the Department."

The word *used* is the key to this authority and it is defined in Section 10 as follows: "The term 'Used Car' means a motor vehicle that has been the subject of a *first sale* whether within this State or elsewhere."

The words *first sale* are in turn defined in Section 7 to mean: "The term 'First Sale'·means the bargain, sale, transfer, or delivery within this State with intent to pass an interest therein, other than a lien of a motor vehicle which has not been previously registered or licensed in this State."

It is seen that a vehicle which has been the subject of a *first sale* in Texas or elsewhere becomes a *used car*, and that a *used car* may be registered upon presentation of an importer's certificate when imported into Texas for sale. The term "first sale" has been the subject of construction by the Texas Supreme Court in Motor Inv. Co.

v. Knox City, 141 Tex. 530, 174 S.W.2d 482, 485. Mr. Justice Alexander there construes the term, insofar as it applies to an exclusively Texas transaction, both by the words of the term's definition and the meaning as drawn from the act as a whole. He construes Section 7, defining "first sale" standing in juxtaposition to Section 8, defining "subsequent sale." From his analysis he concludes: "The term 'first sale' means a transfer of a vehicle which has not previously been registered (Sec. 7), as distinguished from a 'subsequent sale,' meaning a transfer after a vehicle has been registered or should, in law, have been registered (Sec. 8)."

But the court goes further in its analysis to hold that there may be more than one sale before registration, as the case states: "Reading the Act as a whole, we think it clear that every transfer of a motor vehicle, regardless of the number thereof, from manufacturer to dealer, dealer to dealer, and from dealer to 'owner,' as defined in the Act, constitutes a 'first sale,' and that it is not necessary that the vehicle be registered and a certificate of title thereto obtained as a condition precedent to the validity of such 'first sale.'"

This is a precise holding that there may be a first sale in Texas which will compel neither registration nor require an "owner" as defined by the Act, Section 4. Stated another way, this holding is that the final "first sale" compels registration and an "owner," but there may be "first sales" not compelling either registration or an "owner." The Court recognizes that there may be successive "first sales." Construed in this manner, the Supreme Court has stated, in effect, that "first sale" is a sale in Texas "prior" to registration in Texas. Thereafter the sale is a "subsequent" sale. Motor Inv. Co. v. City of Hamlin, 142 Tex. 486, 489, 179 S.W.2d 278, 280.

In short, the statutory definition means a transfer of a vehicle in Texas before registration in Texas. When we fuse this meaning into the statutory definition given by Section 10, we get a definition like this: The term "used car" means a motor vehicle that has been transferred within this state

before registration in this state, *whether within this state or elsewhere.*

Although Section 7 defines and limits "first sale" to a purely and exclusively Texas transaction, the concluding clause in Section 10 shows that the Legislature intended to recognize that there could be a first sale outside of Texas also. Unless we ignore the clause or treat it as meaningless, it can mean only that there can be a first sale outside of Texas.

The incorporation of the meaning of first sale into Section 10 results in a redundant definition of "used car," but it can have no meaning except that a used car, as defined, is a vehicle that has been the subject of a transfer in Texas or elsewhere before registration. This means that any time an interest in an unregistered vehicle passes, anywhere, the vehicle becomes a "used car" in contemplation of Section 10. To reach any other result we must ignore the broadening terms of Section 10, defining "used car."

By incorporating this meaning in turn into Section 29, which permits registration on an importer's certificate, and stating it affirmatively, we get the rule: Such designated agent shall issue a receipt for a certificate of title to any vehicle transferred in this State or elsewhere before registration, imported into this state for the purpose of sale within this state, upon delivery to him by the applicant of an importer's certificate properly assigned by the importer upon form to be presented by the Department.

That this is the correct construction is further supported by the definition of the term "Importer" in Section 17: "The term 'Importer' means any person, *except a manufacturer,* who brings any used motor vehicle into this State for the purpose of sale within this State."

This Section deals with those persons who bring vehicles into Texas for sale as distinguished from those who deal with a vehicle entirely within Texas. The Section recognizes the only conceivable person, the manufacturer, as one who would not be handling a "used" vehicle as construed above. In the hands of the manufacturer, no interest in the vehicle has passed. In

the hands of any other person, whether it be dealer, distributor, or owner, an interest must have passed. The passing of that interest anywhere, as above construed, results in the creation of the "used" car under the sections dealing with importation.

Moreover, a comparison of Section 28, authorizing the issuance of a receipt for application for certificate of title on the basis of a manufacturer's certificate for a "new" car is quite different from Section 29, authorizing such receipt on the basis of an importer's certificate for a "used car." We must bear in mind that the statute by definition restricts "new car" to "first sale" within this State. Section 28, in authorizing the issuance of a receipt for such a "new car" expressly recognizes that within Texas, a vehicle may continue to be "new" even after an interest has passed, so long as the car is not yet required to be registered. That section, unlike Section 29, expressly states that such vehicle may be registered upon presentation of a manufacturer's certificate showing assignments by the *manufacturer, distributor, or dealer.* It is there recognized that within Texas such transfers before registration in Texas do not disqualify the car as a "new car." It goes further to state that the manufacturer's certificate must be assigned to show the *last* transferee to the applicant. This infers that there may properly be intermediate transfers between the manufacturer and applicant, and that for a strictly Texas transaction, the vehicle continues as a "new" vehicle which must be registered upon a manufacturer's certificate. The inclusion of these words in Section 28 and their omission in Section 29, are differences sufficient to convince us that the Legislature has expressly recognized that strictly Texas transactions in vehicles are governed in a manner different from vehicles imported into Texas.

This construction is in harmony with that part of Section 7 which defines "first sale" as the passing of an interest in a vehicle and also accords with the Texas authorities which hold that there may be successive "first sales" so long as the passing of the interest is within Texas. A "new" vehicle may continue in that status even after the

passing of an interest in Texas, whereas such vehicle would be "used" after the passing of an interest outside of Texas. This is so because the Legislature has defined vehicles for two different purposes. A non-imported car falls under one definition; whereas an imported car falls under an entirely different definition. Registration requirements for a non-imported vehicle follow the definitions assigned by statutes to "new car". Secs. 28, 9, 7. Registration requirments for an imported vehicle follow the definitions assigned by statutes to "used car". Secs. 29, 10, 7.

For these reasons, we hold that the designated agent upon presentation of an importer's certificate, accompanied by such evidence of title to the motor vehicle as the Department may require in order to show good title and the names and addresses of all mortgagees, is authorized to issue a receipt for a certificate of title to a motor vehicle in which an interest has passed outside of Texas before registration and is imported into Texas for sale. Secs. 23, 29.

The judgment of the trial court is reversed and rendered so construing Article 1436–1(29), Vernon's Ann. Penal Code.