

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

March 20, 1957

Hon. Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Dear Mr. Calvert:

Opinion No. WW-52

Re: Whether or not a sales tax should
be paid on the transfer of the
motor vehicles from the Dresser
Industries, Inc., to the Lease Plan,
Inc., and a use tax on the transfer
of the motor vehicles from the
Lease Plan, Inc., to the Dresser
Industries, Inc.

You request the opinion of this office upon the questions con-
tained in your letter of February 27, 1957, as follows:

"We are enclosing a letter we received from Mr.
R. J. Banks, attorney for Dresser Industries, Incorporated,
Dallas, Texas; also copies of two agreements, one covering
the transfer of motor vehicles sold by Dresser Industries,
Inc., a Delaware corporation, to Lease Plan, Incorporated.
The other agreement refers to the lease of the motor
vehicles by the Lease Plan, Inc., to Dresser Industries,
Inc.

"The agreements refer to a financing arrangement
between the two corporations, and Mr. Banks stated in his
letter that he was of the opinion that the sale and use tax
levied in Article 7047K, Section 2-a should not be paid on
the transfers.

"You will please advise us whether or not in your
opinion a sales tax should be paid on the transfer of the
motor vehicles from the Dresser Industries, Inc., to the
Lease Plan, Inc., and a use tax on the transfer of the
motor vehicles from the Lease Plan, Inc., to the Dresser
Industries, Inc."

Your questions reframed are:

1. Is the Sales Tax imposed by Section 1 of Article 7047k,
Vernon's Civil Statutes, upon retail sales of motor vehicles sold in
this State due by virtue of the contract of sale and purchase made
between Dresser Industries, Inc., as the Seller and Lease Plan, Inc.,
as the Purchaser, said contract of sale and purchase being dated
February 15, 1957, a copy of which is submitted with your request.

2, Is the Use Tax imposed by Section 2 of Article 7047k, V.C.S., on vehicles purchased at retail sale outside this State and brought into this State for use upon the public highways thereof by a firm or corporation domiciled or doing business in this State, by virute of the contract of sale and purchase between Lease Plan, Inc., and Dresser Industries, Inc., and the lease agreement between Lease Plan, Inc., as Lessor and Dresser Industries, Inc., as Lessee, said lease, being dated February 18, 1957, a copy of which is submitted with your request.

We answer your questions in the foregoing order. Section 1(a) of Article 7047k, V.C.S., levies a tax of 1.1% of the total consideration paid to the Seller by the Buyer of motor vehicles sold in this State, with some conditions not material here.

We must determine if the contract of sale and purchase of February 15, 1957, between Dresser Industries, Inc., designated in the contract as the Seller, and Lease Plan, Inc., designated in the contract as the Purchaser, constitutes a sale of motor vehicles within the purview of the statute, and therefore taxable. An examination of the entire contract is therefore necessary. It is as follows:

"This agreement entered into this 15th day of February, 1957, by and between DRESSER INDUSTRIES, INC., a Delaware corporation, which, with its successors and assigns, is hereinafter termed the "SELLER", and LEASE PLAN, INC., a New York Corporation, which, with its successors and assigns, is hereinafter termed "PURCHASER",

"WITNESSETH:

"1. In consideration of the sum of $4,522,699.99 and the covenants and premises herein recited, the SELLER and its undersigned subsidiary companies herewith agree to sell, and the PURCHASER herewith agrees to purchase, all of the equipment described in that certain proposed Equipment Lease Agreement, a copy of which is attached hereto and marked Exhibit "A", which exhibit is made a part hereof for all purposes.

"2. The SELLER hereby represents and warrants that all of said equipment is, and at the time of the transfer of title will be, in good state of repair and operating condition; that SELLER and its subsidiary companies have clear title thereto, and that all of such equipment is free and clear of all liens and encumbrances whatsoever.

"The SELLER and its subsidiary companies do hereby sell, assign and transfer to the PURCHASER all of their

right, title and interest in and to said equipment and
warrant that the same is free and clear of all liens
and encumbrances whatsoever and agree to warrant
and defend the same against all and every person or
persons whomsoever.

"The SELLER and its subsidiary companies
will execute such bills of sale, certificates of title
or other instruments of conveyance which may be
legally necessary to confirm the foregoing sales and
transfers of unencumbered title to the PURCHASER.

"3. It is understood and agreed by and between
the parties hereto that, in addition to the purchase
price hereinafter referred to, one of the considerations
for SELLER entering into this agreement to sell the
equipment, hereinabove referred to, to PURCHASER
is the agreement of PURCHASER, as evidenced by said
Exhibit "A", to lease said equipment to SELLER in
accordance with the terms and conditions of said
Exhibit "A".

"4. The purchase price of $4,522,699.99 for the
equipment now described in Exhibit "A" shall be
payable in cash by the PURCHASER to the SELLER upon
the execution of the Equipment Lease Agreement as set
forth in Exhibit "A".

"Each of the undersigned companies, except SELLER
and PURCHASER, do hereby authorize PURCHASER and
MANUFACTURERS TRUST COMPANY, 55 Broad Street,
New York City, New York, to pay the purchase price
for such equipment to DRESSER INDUSTRIES, INC., and
do further authorize DRESSER INDUSTRIES, INC., to
receive and receipt for all moneys received in connection
with the sale of such equipment, and such companies do
further agree to hold PURCHASER and MANUFACTURERS
TRUST COMPANY harmless from any and all claims,
demands, or right to receive payment for the sale of any
such equipment.

"IN WITNESS WHEREOF, the parties hereto have
affixed their signatures on the day, month and year here-
inabove set forth at Dallas, Texas.

We do not know if all or only a part of the equipment
covered by the aforesaid contract consists of motor vehicles. We
assume that a substantive portion of it does. This opinion is con-
fined, in answering your first question, only to motor vehicles covered
by the contract, located within this State as of the date of the contract

and which have not been taken out of the State and resold prior to the date of the contract. The statute defines "sale" or "sales" and "retail sale" or "retail sales" as follows:

"The term 'sale' or 'sales' as herein used shall include instalment and credit sales, and the exchange of property, as well as the sale thereof for money, every closed transaction constituting a sale. . .

"The term 'retail sale' or 'retail sales' as herein used shall include all sales of motor vehicles except those whereby the purchaser acquires a motor vehicle for the exclusive purpose of resale and not for use."

We think the contract construed in its entirety imports a "sale. . . for money" and is a "closed transaction" and is a sale for use and not for resale, all features of a taxable sale under the statute.

You are therefore respectfully advised that as to all motor vehicles located in Texas, where they have remained without a resale outside the State, that are covered by the contract, the tax imposed by Section 1(a) of Article 7047k, V.C.S., is due.

In answer to the second part of your question, you are advised that the use tax imposed by Section 2 of Article 7047k, on purchases of motor vehicles made outside the State and brought into this State for use upon the public highways by a resident of this State or by firms or corporations domiciled or doing business in this State would apply to any of the motor vehicles covered by the contract or lease agreement purchased outside the State, but brought into the State for use upon the highways of this State. The use tax may accrue under circumstances such as covered by our Opinion No. V-1044, a copy of which you have. Therefore, if Dresser Industries, Inc., should bring into the State motor vehicles, covered by the contract, that were purchased outside the State but brought into the State for use upon the highways of the State, the use tax would be due by the one who operates said motor vehicles upon the public highways of this State. This is provided for by the statute in this language:

". . . The tax shall be the obligation of and be paid by the person, firm, or corporation operating said motor vehicle upon the public highways of this State."

The statute contains the only exemption from the tax which we are privileged to recognize; that is where the purchase is made for resale and not for use. It is quite clear that the motor vehicles involved here are for use and not for resale. We do not regard the lease agreement as modifying or changing the otherwise plain and unambiguous language of the contract of sale and purchase. No tax is

imposed under the statute upon the leasing of motor vehicles, but only upon sales.

You are therefore advised in answer to the second part of your question that the use tax imposed by Section 2 of Article 7047k, depends upon whether there is involved motor vehicles purchased outside the State but brought into the State for use upon the public highways. This, of course, is a question of fact which we are not authorized to pass upon.

This taxing statute (Article 7047k, Vernon's Civil Statutes) must of a necessity be construed in connection with Article 1436-1, Vernon's Annotated Penal Code commonly referred to as the Certificate of Title Act. This Article of the Penal Code is divided into many sections and subsections and a detailed analysis is not required for the purpose of this Opinion. Suffice it to say that it covers every step of the way referable to the sale, mortgage, etc., of motor vehicles. The Court of Civil Appeals in the case of Commercial Credit Corporation, v. Harris, 227 S.W.2d 886 (no writ history) expressed it as follows:

"Since 1939, Article 1436-1, Vernon's Penal Code, which article is divided into more than sixty-four sections and subsections, has been in effect in this State. The act is very complete in its detail and covers every step of the way referable to acquiring, owning, operating, buying, selling, mortgaging and otherwise creating liens on motor vehicles. All persons in this State are chargeable with notice of its provisions and must in their dealings be governed thereby. ..."

The case of Griffin v. Moon, 288 S.W.2d 543 (no writ history) holds that the provisions of Article 1436-1, Vernon's Annotated Penal Code, if not strictly observed, neither a sale nor a mortgage is accomplished and the parties will be left as the Court finds them.

The Supreme Court in the case of Motor Investment Co. v. City of Hamlin, 142 Tex. 486, 179 S.W.2d 278, said the following:

". . . The obvious purpose of the act is to cover the whole field of sales and liens upon such motor vehicles. It carries the usual provision that 'All Acts or parts of Acts inconsistent with the provisions of this Act are hereby repealed.'"

## SUMMARY

The sales tax imposed by Section 1 of Article 7047k, V.C.S., accrues upon all retail sales of motor vehicles sold in this State and the use tax imposed by Section 2 of Article 7047k, V.C.S.,

accrues on all purchases of motor vehicles made outside this State, but brought into this State for use upon the public highways by a resident of this State or a firm or corporation domiciled or doing business in this State and the tax is imposed upon the user of the vehicle upon the highways of this State. This taxing statute should be construed in connection with Article 1436-1, Vernon's Annotated Penal Code.

Yours very truly,

WILL WILSON
Attorney General

By L. P. Lollar
L. P. Lollar
Assistant

LPL:cs

APPROVED:

OPINION COMMITTEE
H. Grady Chandler, Chairman