General Finance Corporation, Appellee, v. Krause
Motor Sales et al. Krause Motor Sales, Appellant.

Gen. No. 40,690.

Opinion filed November 27, 1939.

EDWARD P. McKEOWN and RAYMOND J. BOLAND, both
of Chicago, for appellant.

ALEXANDER W. JAMIESON, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the
court.

Plaintiff brought an action of replevin against de-
fendants to recover possession of two automobiles, al-
leging that it was entitled to a 1935 Chevrolet valued
at $200 and a 1936 DeSoto valued at $300. The auto-

mobiles were taken on the writ from the Krause Motor Sales (which will hereinafter be referred to as defendant) and delivered to plaintiff. Defendant Keller was not served and did not enter his appearance. What became of him so far as the record discloses, is a mystery. Defendant, in its affidavit of defense, denied that plaintiff was entitled to possession of the automobiles and averred that it was the lawful owner of them; that plaintiff gave Keller the right to sell and transfer titles to the automobiles and that plaintiff was estopped to claim it was entitled to the cars; that plaintiff knew the cars were displayed by Keller in his place of business for any purchaser and that defendant bought the two cars from Keller August 13, 1938, paying him therefor $530 in cash. There was a trial before the court without a jury and a finding that plaintiff was entitled to possession of the cars. Judgment was entered accordingly and defendant appeals.

The record discloses that Keller was in the business of buying and selling new and secondhand automobiles in Chicago and was being financed by the Motor Acceptance Company of Illinois; that on June 1, 1938, he borrowed from the Finance Company $1,015 on five specified automobiles, the amount of the loan on each car being separately stated. One of the cars was the Chevrolet involved in this suit on which Keller had borrowed $160; that on July 14, 1938, he borrowed from the Finance Company $291 on the DeSoto car and $301 on another car not involved here; that on each of the two occasions Keller executed as security for the loan a document consisting of three parts which are designated as (1) a bill of sale to the Finance Company for the automobiles, (2) a "Trust Receipt" and (3) a negotiable promissory note for the amounts borrowed.

The "Trust Receipt" recites that Keller, "Trustee," received the automobiles from the Finance Company, "Entruster" to hold in trust for the Finance

Company "as its property, and agrees to return the same on demand in good order and unused." The trustee is also designated the "dealer" and it is provided that the dealer "will not rent, drive, pledge, mortgage, or otherwise dispose of or encumber said cars; that said cars shall not be sold at less than the price thereof herein stated; that the proceeds of such sale shall be kept separate from the dealer's funds and on the day of the receipt thereof be transmitted to said Motor Acceptance Company of Illinois. . . .

"The undersigned dealer agrees to keep a separate account of each of said cars held in trust by him (it) for said Motor Acceptance Company of Illinois; that said undersigned dealer shall furnish to said Motor Acceptance Company of Illinois or its assigns a true and complete report of all sales of cars made by him on the day of the sale thereof; that the undersigned dealer shall also permit said Motor Acceptance Company of Illinois, its representatives or assigns to examine the undersigned dealer's books and the cars in his (its) possession; . . .

"It is the understanding and agreement of the parties hereto that this Trust Receipt was drawn pursuant to the provisions of the Uniform Trust Receipt Act now in force in the State of Illinois." The Motor Acceptance Corporation assigned its interest to plaintiff.

Although the three parts of the document executed by Keller, June 1, 1938, are designated a "bill of sale," "trust receipt" and a "promissory note" clearly plaintiff's only interest in the two cars was as security for the debt. "The bill of sale may seem to make the creditor a purchaser; whatever its recitals, it is a mortgage in another form. *Whittmore v. Fisher*, 132 Ill. 243. The trust receipt may state that the debtor holds the car as the property of the creditor; in truth it is his own property subject to a lien." *Davis v. Aetna Acceptance Co.*, 293 U. S. 328.

The evidence further shows that the Finance Com-

pany had been doing business with Keller for more than a year before he borrowed the money on the two cars involved in this controversy and during that time had financed Keller "on the floor plan" in the handling by him of about 500 automobiles which he sold to the public; that on every sale made by him he paid off the loan to the Finance Company on the cars sold. The custom was for Keller to keep the automobiles on his "show-room floor" to be sold to the public; that during the time adjusters for the Finance Company checked Keller's cars about twice a week; that in August, 1938, Keller's business was slow, cars held under the Trust Receipts were not moving fast enough and the Finance Company was anxious for him to reduce the number of cars by having Keller sell them and thus reduce the amount of his loans—that plaintiff was urging him to sell the cars and pay up his loans.

On August 13, 1938, Keller sold the two cars to defendant, Krause (who sold new and used cars), for $490—$340 for the DeSoto and $150 for the Chevrolet. At the same time Keller also sold a Ford car to Krause for $40 and executed a bill of sale for the three automobiles to Krause. The price for which these cars were sold, $530, was paid by Krause who gave his check therefor to Keller. The check is in the record but is for $595, $65 more than Keller paid for the three cars. What this $65 was for does not appear. Keller failed to pay the Finance Company the two amounts it had loaned on the two automobiles, or any part thereof.

Plaintiff's position is that by virtue of the "Trust Receipts" Act of 1935, ch. 121½, par. 166, *et seq.*, Ill. Rev. Stat. 1939, [Jones Ill. Stats. Ann. 135.17(1) *et seq.*] it is entitled to the possession of the two automobiles by reason of the fact that it held the two "Trust Receipts" executed by Keller; that Keller had sold the two cars and failed to pay the Finance Company the amount he had borrowed on them, viz., $160 and $291, or a total of $451. On the other hand, Krause's position,

as stated by his counsel, is that he is a "buyer in the ordinary course of trade," within the terms of the Trust Receipts Act; that he paid Keller $530 for the two cars and received a bill of sale therefor from Keller; that the "cars were displayed for sale on the used car lot" by Keller and that even if plaintiff held valid trust receipts executed by Keller "it is estopped to set up as against this defendant the lien of said trust receipts."

Professor Bogert, of the University of Chicago, in volume 3, of the University's Law Review, 1935–36 (p. 26) discusses the Trust Receipts Act saying: "That the statute is difficult to understand is shown by the memorandum of Governor Horner of Illinois which he filed with the Secretary of State when he permitted the bill to become law last July without his signature." He then quotes what the Governor said in returning the bill, and continuing said (pp. 31, 32, 33): "The fundamental purpose of the trust receipt is to afford lenders short term protection against the honest insolvency of their borrowers. It was, therefore, accepted at common law that the trust receipt was valid against the creditors of the borrower, whether lien or general, and whether acting for themselves or through a representative like a trustee in bankruptcy. . . .

"Since a cardinal object of the trust receipt transaction is ordinarily to enable the borrower to sell the goods in order to raise money to pay the lender, it has been generally held at common law that the lender could not assert any rights against the purchaser from the borrower in the usual case. The lender has given an express or implied power of sale by which he should be bound. . . .

"A purchaser in the ordinary course of business from the borrower get title free of the trust receipt, if the borrower had an unlimited power of sale, regardless of filing."

Section 13 of the act provides for the filing of a docu-

ment with the Secretary of State signed by the "en-truster" (Finance Company) and the trustee (dealer-borrower), stating that the entruster is to finance the dealer in buying automobiles, etc., and it is agreed that such document was properly filed.

We think the evidence shows that defendant, Krause, bought the two automobiles from Keller "in the ordinary course of trade" and that the evidence fails to show he had actual knowledge that Keller was being financed by the Finance Company. Keller, by the terms of the trust receipt, was given unlimited power to sell the automobiles. There was no requirement that he obtain the consent of the Finance Company before so doing. The trust receipts provide that Keller shall not sell the cars "at less than the price thereof herein stated" which apparently means the loan made on each of the cars; that he should keep the proceeds of the sale separate from his funds and transmit the money on the day of the sale to the Finance Company; and further that he report all sales of cars made by him on the date of the sale thereof.

Counsel for plaintiff contends that "defendant's transactions with Keller were not 'Sales by Trustee in the ordinary course of trade.' They were not customary open market sales at retail to 'a man in the street' for a usual price, in a usual quantity, for a usual purpose, arrived at by usual negotiation" and therefore Krause "was not a 'buyer in the ordinary course of trade' " as defined by the Trust Receipts Act. We are unable to agree with this contention. *Colonial Finance Co. v. DeBenigno,* 125 Conn. 626, 7 Atl. (2d) 841. That case was an action of replevin brought by the finance company to recover the possession of an automobile delivered to the Bethel Motor Sales, Inc., under an agreement in accordance with the Uniform Trust Receipts Act which is similar to the Illinois act. There was a judgment for the defendant, which on appeal was affirmed. The court said that by the terms

of the act the motor company had liberty to sell the automobile to the buyer in the ordinary course of trade and that the buyer takes the property free from the finance company's security interest unless the limitation of sale was actually known to the buyer. The motor company delivered the car to defendant DeBenigno "and the plaintiff contends this was contrary to the terms of the trust receipt, and that the defendant who was a subdealer of Bethel Motors was not a 'buyer in the ordinary course of trade' within the meaning of the act." And after stating the facts the court said (pp. 842, 843): "In the trust receipt it was provided that the Bethel Motors might exhibit the car and, having obtained the written consent of the plaintiff, might sell it for cash for not less than the minimum sale price specified in the receipt, being accountable to the plaintiff for the proceeds of the sale. . . . The defendant knew that Bethel Motors financed some of its automobiles with finance companies and some of the cars which it procured were subject to finance liens, but had no knowledge that the company was engaged in trust receipt financing with the plaintiff or with any other finance company, and had no actual knowledge of any limitation placed upon the liberty of sale of Bethel Motors. The defendant at all times acted in good faith.

"The plaintiff contends that the defendant was not a buyer in the ordinary course of trade because that term does not include a transaction between a distributor and one of its agents or subdealers, but is intended to cover transactions with the ultimate consumer. . . . According to the construction placed on the act by the plaintiff the only transactions covered would be those in retail trade. There is a scarcity of decisions upon this precise point. . . . There is nothing in the language of the act which requires such a construction, nor upon the facts as found are we enabled to rule as a matter of law that the trial court was in error in

concluding that the defendant was a buyer in the ordinary course of trade.'' Continuing the court said (p. 844): ''It is significant in this connection that the Trust Receipts Statute of 1935 . . . specifically limited the protection to those purchasing at retail sale, but no such limitation is contained in the present statute which repealed the statute of 1935.'' In that case the Bethel Motors, ''Trustee'' under the terms of the Trust Receipt with the finance company was required to get the finance company's written consent before a sale could be made. The sale was there made to a subdealer. The automobile there involved was not paid for all in cash at the time of the sale but defendant, the purchaser, had a credit with the Bethel Company at the time which was applied toward the payment of the car and it was held that the finance company was not entitled to the possession of the automobile.

The case at bar is much stronger. There is no limitation in the Trust Receipt on the right of the trustee, Keller, to sell. He was not required to get the written consent of the Finance Company before doing so. Defendant Krause paid cash for the cars when he bought them.

Upon a careful consideration of all the evidence in the record, we are of opinion that the overwhelming weight, if not all of the evidence, is to the effect that defendant was a buyer of automobiles in the ordinary course of trade, and the judgment of the municipal court of Chicago is reversed and the cause remanded with directions to enter judgment in favor of defendant. (Sec. 92, Civil Practice Act, Ill. Rev. Stat. 1939, ch. 110, § 216, p. 2441 [Jones Ill. Stats. Ann. 104.092].)

*Reversed and remanded with directions.*

MATCHETT, P. J., and McSURELY, J., concur.