**P & E FINANCE COMPANY, a Corporation, Plaintiff in Error,**

v.

**Ken STONECIPHER and A. E. Stonecipher, Defendants in Error.**

**No. 39779.**

Supreme Court of Oklahoma.

Nov. 5, 1963.

766

Fischl & Culp, F. Lovell McMillin, Ardmore, for plaintiff in error.

W. Samuel Dykeman, R. L. Wampler, Oklahoma City, for defendants in error.

WELCH, Justice.

On June 30th, 1959, defendants Stonecipher purchased nine automobiles from Slater-Mashburn Motor Company. P & E Finance Company sued for possession of five of such automobiles covered by floor plan mortgages, duly recorded, under the terms of which possession thereof remained in the mortgagors for display and sale in the regular course of trade for cash or upon such terms as are approved by the mortgagee, the mortgagor to hold the proceeds of sales thereof in trust for the mortgagee to apply on the mortgages. It was contended in plaintiff's petition that the mortgagor and defendants, Stonecipher, had conspired to defraud the mortgagee; that the Purchase was with notice of the existence of the floor plan mortgages and was subject to a lien of the plaintiff mortagee thereon; and defendants' purchase of the automobiles was not in the regular course of trade of Slater-Mashburn Motor Company, the mortgagor, within the meaning of 46 O.S.1951 (now 1961) § 91 et seq., so that the purchaser takes free of lien of the wholesale mortgage.

The trial court held that the concerned five automobiles, of the sale of the nine, passed to the purchaser free and clear of lien, the mortgagee having by virtue of 46 O.S.1951 (now 1961) §§ 91–94 inclusive, waived its lien by leaving the automobiles with the mortgagor for sale. While these sections were included among those repealed by the 1961 Legislature in the adoption of Title 12A, Uniform Commercial Code, they were in effect at the times here concerned, and were carried forward in the 1961 statutes under the same numbers. They were intended, plaintiff contends, to protect only innocent purchasers in the ordinary course of trade from the constructive notice afforded by the filing statutes, 46 O.S.1951 (now 1961) § 57 et seq., and where a used car dealer has notice of the existence of a mortgage on automobiles in the possession of another used car dealer and purchases them the purchase is subject to the lien of the mortgage.

Plaintiff cites Bob Harper Finance Company v. Lester, 206 Okl. 684, 246 P.2d 362, wherein we pointed out that our earlier decision in Owen v. Miller, 190 Okl. 205, 122 P.2d 140–142, listed five elements prerequisite to finding that a mortgagee had waived the protection of the constructive notice offered by filing its chattel mortgage, in these words:

"* * * the mortgage must have been given by a recognized dealer in similar articles; the mortgaged article must have been part of the stock in trade of the mortgagor or intended to be so; the article must have been offered for sale to the general public; these facts must have been known to the mortgagee; and the purchaser from the mortgagor must have been an innocent purchaser without actual notice of the mortgage, acquiring the property in good faith in the usual course of trade."

It is said by plaintiff that defendants, Stonecipher, were not innocent purchasers, and that the evidence so showed. It is urged by plaintiff that the protection to innocent purchasers offered by the filing statutes should not be extended to the Stoneciphers, who, by testimony offered by plaintiff, were shown to have had knowledge of the floor plan mortgages held by plaintiff on the stock of automobiles that Slater-Mashburn offered for sale. We have examined the record and observe that plaintiff offered such testimony. J. W. Mashburn testified that he and Kenneth Stonecipher were good friends and although

he did not know whether he advised him, he thought he knew they did business with the plaintiff; that he had told Stonecipher that they had a floor plan. Bill W. Slater testified that Kenneth Stonecipher knew Slater-Mashburn Motor Company had cars that were floor planned to plaintiff. There was evidence to the contrary, however. Bill Stonecipher testified that he did not know until the day after the purchase, or the day following that, that the five cars were floor planned, when he was so advised by a representative of the plaintiff. Kenneth Stonecipher denied that prior to the date of the purchase of the cars he had knowledge that they were mortgaged.

 The general finding of the trial court in favor of the defendants Stoneciphers that there was no fraud or collusion between the defendants reflects a conclusion of the trial court that the Stoneciphers had no notice of plaintiff's mortgages. The evidence about notice was conflicting. The trial court had the advantage of hearing the witnesses testify and of observing their demeanor while testifying. Upon review of the record we cannot say that the clear weight of the evidence was against the decision reached by the trial court, and, following the precedent of our decisions on the point in Culbertson v. Greene, 206 Okl. 210, 243 P.2d 648, and other cases referred to in 2A Okla.Digest, Appeal & Error we will not on appeal, under the proposition urged, disturb the judgment of the trial court.

██ Plaintiff's second proposition raises the question as to whether the sale of the cars here involved falls within the category of a sale in the ordinary course of trade as is referred to in 46 O.S.1951 (now 1961) § 91 et seq., so that the buyer takes them free of the floor plan mortgages.

The mortgages contained phraseology to the effect that the mortgagor should have possession of said chattels and might sell them in the regular course of his retail trade. It is contended that a sale of several of them at the prices they brought and to another used car dealer for resale is not in the ordinary course of trade within the meaning of 46 O.S.1951 (now 1961) § 93. That section reads:

"All goods, wares, and merchandise sold in the ordinary course of trade shall be free of the lien of such mortgage or pledge in the hands of the purchaser thereof."

Determination of the phrase as used in both the mortgage instrument by the involved parties and as used in said statute is, of course, relative. The customary operation of businesses like that of the mortgagor must be considered. It is well known that used car dealers generally transfer, trade and sell cars among themselves as a matter of convenience. As to this particular mortgagor, the testimony showed that Slater-Mashburn Motor Company had sold the defendants, Stonecipher, many cars before and as many as twelve at one time. Surely financing companies of used car dealers are, and were, aware of such transactions both generally and often particularly. It would seem that parties accustomed to such operations contemplated sales by one used car dealer to another or a single automobile, possibly two. And may it be said that five automobiles constitute an unusual number? Also, although in First National Bank & Trust Co. v. First National Bank, Ardmore, Okl., 335 P.2d 900, 907, we defined a buyer in the ordinary course of trade as "one to whom goods are sold for new value, * * *" some uncertainty occurs in ascertaining the mortgage's meaning in the words "usual retail prices" with reference to the articles under consideration in the light of the evidence here adduced. Wholesale and retail prices of used cars are difficult to determine. The range of prices wholesale appears to overlap into the range of prices retail. Prices vary from day to day as do the extents of depreciation on automobiles. It seems patent that one selling only retail might accept a lower price per article in order to sell several such. Let us suppose that instead of automobiles the articles for our concern were washing machines and that a customer needed a quantity for

equipping a help-your-self laundry, it is conceivable that a seller of washing machines might be willing to reduce the price of such articles in that situation although the purchaser's purpose be not that of resale of the articles. To draw a distinction in the purchaser's intended use of the articles bought seems unsatisfactory as such appears of small significance to the seller. The evidence here is equally inconclusive. One gets the impression that "usual retail price" is an indefinite term. We cannot say that the evidence defined the intention of the parties to the contract in using the term with greater clarity than this court defined it as applied to Sec. 93.

In Stemmons, Inc. v. Universal C. I. T. Credit Corporation, Okl., 301 P.2d 212, 216, we held that "ordinary course of trade" as used in 46 O.S. 1951 § 93 applied to a sale by one automobile dealer to another if such sale was in the seller's ordinary course of trade, whether the sale be retail or wholesale, and pointed out that Sec. 93, supra, does not require that the purchaser be an innocent purchaser or without knowledge of the mortgage, but only that the property be sold in the ordinary course of trade.

We are of the opinion that the language of the statute, supra, was intended by the Legislature to encompass all transactions between persons who, in their ordinary business dealings, effected a sale and purchase for a consideration sufficient to support a simple contract. Had the Legislature intended that transactions in the ordinary course of trade be limited to sales at retail some indication of such requirement could have been expressed in the statute.

The judgment is affirmed.

BLACKBIRD, C. J., and DAVISON, JOHNSON, and JACKSON, JJ., concur.

IRWIN and BERRY, JJ., concur in result.

WILLIAMS, J., dissents.