ASSOCIATES DISCOUNT CORPORA-
TION, Petitioner,

v.

RATTAN CHEVROLET, INC., Respondent.

ASSOCIATES DISCOUNT CORPORA-
TION, Petitioner,

v.

BANNER CHEVROLET, INC., Respondent.

Nos. B–1741, B–1742.

Supreme Court of Texas.

Oct. 7, 1970.

Rehearings Denied Dec. 16, 1970.

Brown, Kennedy & Hill, Jack Kennedy, Sherman, McGown, Godfrey, Decker, McMackin, Shipman & McClane, John W. McMackin and Henry Getchell, Fort Worth, for petitioner.

Elliott & Nall, Ralph Elliott, Sherman, Morgan & Nobles, Decator, L. A. Nelson, Jr., Denton, for respondents.

WALKER, Justice.

These are companion cases involving substantially the same facts. The principal question to be decided is whether the purchase by an automobile dealer from another dealer of a new, unregistered motor vehicle that is subject to a security interest created by the seller is governed by the provisions of the Uniform Commercial Code that protect a buyer in ordinary course of business. We hold that it is.

The facts of only one of the cases will be stated in any detail. Associates Discount Corporation is in the business of financing the purchase of automobiles by dealers. On July 26, 1966, it filed with the Secretary of State a financing statement signed by R. A. Parker, a dealer who was engaged in business under the name of R. A. Parker Chevrolet, covering "New and Used Motor Vehicles. Chattel Paper" and all proceeds of the property. Thereafter during January, 1968, Parker acquired three new motor vehicles. In each instance the purchase money was advanced by Associates, and Parker executed to Associates a note for the amount of the loan and a security agreement specifically describing the vehicle and securing the note. The manufacturer's certificates on the three vehicles were delivered to and held by Associates. The liens were not noted on the certificates, but there is no contention that Associates failed to do anything that was necessary to perfect its security interests.

The three vehicles were purchased from Parker by Rattan Chevrolet, Inc., another automobile dealer, in two transactions that occurred on and shortly after February 8, 1968. None of the manufacturer's certificates was delivered to Rattan. About two weeks later Associates brought suit against Parker and Rattan to recover on the notes and for foreclosure of its security agreements. At least two of the vehicles were seized under writ of sequestration and sold as perishable property by order of the court. Rattan then amended its answer and filed a cross-action to recover actual and exemplary damages for conversion of the vehicles.

The other case involves one new Chevrolet automobile that was subject to a security interest held by Associates when it was sold by Parker to Banner Chevrolet, Inc. In each case the trial court rendered summary judgment for Associates, but the Court of Civil Appeals concluded that Rattan and Banner took free of the security interests. The judgments of the trial court

**548**

were reversed, and the causes were remanded for the limited purpose of determining the damages, if any, to which Rattan and Banner are entitled. Rattan Chevrolet, Inc. v. Associates Discount Corp., Tex.Civ.App., 443 S.W.2d 360; Banner Chevrolet, Inc. v. Associates Discount Corp., Tex.Civ.App., 443 S.W.2d 370. Although we agree with the Court of Civil Appeals that Rattan and Banner may be entitled to protection as buyers in ordinary course of business, the judgment of the intermediate court will be modified to order a general remand because of deficiencies in the summary judgment proofs concerning the sales.

Section 45 of the Certificate of Title Act, Vernon's Ann.P.C., art. 1436–1, hereinafter referred to as the Act, which was enacted in 1939, provides as follows:

"Sec. 45. Exposure for sale of any motor vehicle by the owner thereof with the knowledge or consent of any mortgagee shall not affect the rights of any mortgagee as against all third parties."

The definition of "owner" in Section 4 of the Act expressly excludes manufacturers, importers, distributors and dealers. It is settled, however, that Section 45 applies to every motor vehicle exposed for sale by the one to whom it belongs whether he be a manufacturer, importer, dealer or consumer. Motor Inv. Co. v. City of Hamlin, 142 Tex. 486, 179 S.W.2d 278. Under its provisions the rights of Associates as against Rattan and Banner would not be affected by the fact that the vehicles were exposed for sale by Parker with the knowledge and consent of Associates.

On the other hand Section 9.307 of the Uniform Commercial Code,[1] which was adopted in 1965, provides that:

" (a)   A buyer in ordinary course of business (Subdivision (9) of Section 1.-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

Associates insists that these cases are governed by the Act and the decisions thereunder and that the Code has no application. A somewhat similar problem was considered several years after the Act was adopted. Two earlier statutes, neither of which was mentioned in the Act, provided: (1) that every form of lien attempted to be given on merchandise daily exposed for sale should be deemed fraudulent and void, and (2) that while purchase money chattel mortgages on motor vehicles were superior to the claims of other creditors, the mortgage would be void as to bona fide purchasers when the vehicles were daily exposed for sale. Art. 4000, Tex.Rev.Civ. Stat. 1925, as amended by Acts 1935, 44th Leg., p. 302, ch. 115, § 1; Acts 1933, 43rd Leg., p. 305, ch. 117. It was held in Motor Inv. Co. v. City of Hamlin, 142 Tex. 486, 179 S.W.2d 278, that the Act repealed both the earlier statutes in so far as they pertained to motor vehicles. In reaching this conclusion, we pointed out that the Act is a special law dealing with motor vehicles only, that its purpose was to cover the whole field of sale and liens thereon, and that Section 45 was in direct conflict with the earlier statutes.

■ No part of the Act was expressly repealed when the Code was adopted in 1965, but Section 10–103 provides, with certain exceptions not material here, for the repeal of all acts and parts of acts that are in conflict therewith. One of the declared purposes of the Code is to simplify, clarify and modernize the law governing commercial transactions. Section 1.102. It is a general body of law intended as a unified coverage of its subject matter. Section 1.104. Some transactions in motor vehicles are expressly governed thereby.

1. Except as otherwise indicated, all statutes are cited by the section number under which they appear in V.T.C.A., Bus. & C.

Section 9.302 provides, in effect, that a lien on a motor vehicle that is not inventory may be perfected only by indicating the security interest on a certificate of title or application therefor, but that a security interest in a motor vehicle that is inventory may be perfected only by complying with the filing provisions of Chapter 9. Section 2.403 provides that any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business, and the broad definition of "goods" in Section 2.105 clearly includes motor vehicles. Since the Act and the Code thus deal, at least in part, with the same subject matter, we agree with the Court of Civil Appeals that they are in pari materia. When the two are considered together, as they must be, it is our opinion that Section 9.307 applies to the sale of a motor vehicle. See Medico Leasing Co. v. Smith, Okl., 457 P. 2d 548; Associates Discount Corp. v. Old Freeport Bank, 421 Pa. 609, 220 A.2d 621; Sterling Acceptance Co. v. Grimes, 194 Pa. Super. 503, 168 A.2d 600; Howarth v. Universal C.I.T. Credit Corp., D.C.Pa., 203 F. Supp. 279.

■ Since Rattan and Banner are dealers and purchased at wholesale rather than in a retail transaction, it might be argued that they are not entitled to the protection of Section 9.307. We have concluded, however, that these circumstances do not necessarily prevent their enjoying the status of a buyer in ordinary course of business. See Colonial Finance Co. v. De Benigno, 125 Conn. 626, 7 A.2d 841; C. Jon Development Corp. v. Pand-Rorsche Corp., 69 Ill.App.2d 469, 217 N.E.2d 416; General Finance Corp. v. Krause Motor Sales, 302 Ill.App. 210, 23 N.E.2d 781; Medico Leasing Co. v. Smith, Okl., 457 P.2d 548; P. & E. Finance Co. v. Stonecipher, Okl., 386 P.2d 765; Stemmons, Inc. v. Universal C. I.T. Credit Corp., Okl., 301 P.2d 212; Independent News Co. v. Williams, 3rd Cir., 293 F.2d 510.

Rattan and Banner are not entitled to summary judgments unless each established conclusively that it was a buyer in ordinary course of business. The term is defined in Section 1.201 as follows:

" (9) 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker. 'Buying' may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt."

The only proof offered in support of Rattan's motion for summary judgment is: (1) the motion itself, which is verified by Paul Singleton, General Manager of Rattan, and (2) an additional affidavit made by Singleton. In so far as relevant to the question of whether Rattan was a buyer in ordinary course of business, the motion and affidavit simply state, in so many words, that the vehicles were held by Parker for sale in the ordinary course of business and constituted inventory within the meaning of the Uniform Commercial Code, that all of the sales were made in the ordinary course of business and Rattan paid value therefor, that Singleton contacted Parker relative to the purchase of one of the vehicles, that an employee of Rattan was sent to Parker with automobiles the latter wanted, that said automobiles with manufacturer's certificates of origin were delivered to Parker for valuable consideration, that the employee of Rattan purchased and took delivery from Parker of one of the vehicles, and that a few days later Singleton had a conversation with Parker and agreed to and did purchase the other two vehicles.

**550**

■ This showing will not support a summary judgment for Rattan. Whether a sale is in ordinary course is a mixed question of law and fact, and that question cannot be resolved without information concerning all the circumstances of the sale. Singleton's unsupported conclusion does not establish conclusively that the sales were in ordinary course of business. The affidavits also fail to show how the affiant could have had personal knowledge of Parker's inventory or of the arrangements between Parker and Rattan's employee who made the first purchase. The word "value" has various meanings, moreover, and the nature of the consideration given by Rattan for the vehicles is not affirmatively and clearly shown.

The proofs filed by Banner are in substantially the same form, but they further show that Parker contacted Banner and then sent an employee to the latter's place of business to sell the automobile. This may or may not be unusual, but it is an additional reason for requiring information concerning the details of the transaction and the custom of the business before deciding whether the sale was in ordinary course.

■ There is one question that cannot be decided under the facts of these cases. All of the automobiles were new, unregistered motor vehicles. The sale of such a vehicle from manufacturer to dealer, from dealer to dealer, and from dealer to "owner," as defined in the Act, is a "first sale," and the transfer of the manufacturer's certificate is not essential to the validity of the sale. Motor Inv. Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482. We do not attempt to decide, therefore, whether the failure to comply with some requirement of the Act that is essential to validity of the sale will prevent the purchaser's being a buyer in ordinary course of business. See Medico Leasing Co. v. Smith, Okl., 457 P. 2d 548. The affidavits indicate that the sales from Parker to Rattan and Banner may have been handled in the usual and customary manner even though the manu-

facturer's certificates were never transferred to the purchasers.

The judgments of the Court of Civil Appeals are modified so as to order a general remand of both causes, and as so modified the judgments are affirmed.

## ON MOTION FOR REHEARING

In their motions for rehearing, Rattan and Banner direct our attention to the judgments rendered by the trial court and the Court of Civil Appeals. They then say, and with good reason, that the effect of our judgments thereon is not entirely clear. To eliminate any question in this respect, our judgments entered in the two cases on October 7, 1970, are set aside and judgment is now rendered in each case reversing the judgments of the courts below and remanding the cause to the trial court. In all other respects the motions for rehearing are overruled.