**BRUCKNER TRUCK SALES, INC., Appellant,**

v.

**FARM CREDIT LEASING SERVICES CORPORATION and Estelline Co-op Gin, Inc., Appellees.**

No. 07–94–0338–CV.

Court of Appeals of Texas, Amarillo.

Aug. 16, 1995.

Rehearing Overruled Sept. 13, 1995.

Order Overruling Motion for Rehearing Oct. 11, 1995.

James L. Wharton, Jones Flygare Galey Brown & Wharton, Lubbock, for appellant.

Jim Hund, McCleskey Harriger Brazill & Graf, L.L.P., Robert L. Jones, Crenshaw Dupree & Milam, L.L.P., Lubbock, for appellees.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

This appeal requires us to determine whether Farm Credit Leasing Services Corporation (Farm Credit) and Estelline Co-op Gin, Inc. (Estelline), each of which purchased a truck from Module Truck Services, Inc. (Module), established as a matter of law the right to the manufacturer's certificates of origin held by Bruckner Truck Sales, Inc., the owner of the trucks, so as to be entitled to the summary judgment rendered by the trial court. Determining that neither did so, we will reverse and remand.

Bruckner, maintaining a sales office in Lubbock, is a dealer for Mack Trucks, Inc., which manufactures various types of trucks, including bare chassis to which specialized equipment may be added. In June of 1992, Bruckner took delivery of two Mack truck chassis, together with the manufacturer's certificate of origin for each truck issued by Mack Trucks, Inc. Retaining the manufacturer's certificates, Bruckner entrusted to Module, at its principal place of business in Lubbock, the two trucks to be outfitted for use in the cotton industry. For each truck, Module's agent signed a receipt, which contained the agreement that the truck was to remain the property of Bruckner and was to be released only upon Bruckner's written order. Neither truck was registered or licensed.

In contravention of its agreements with Bruckner, Module sold and delivered one of the completed trucks to Estelline. The sales price was $122,500 and was paid by Estelline to Module in the form of a trade-in and a $60,000 check.

Module and Swisher Co-op Gin (Swisher) executed a contract dated May 29, 1992 for the sale by Module, and the purchase by Swisher, of the other truck. The sales price was $117,500 and Swisher paid Module $23,-500 as the down payment. The record is silent as to any resolution of the contract or any transfer of the truck by Swisher. The record does reveal that on June 29, 1992, Module and Farm Credit executed a contract for the sale by Module, and the purchase by Farm Credit, of the same vehicle to be delivered to Swisher. The sales price was $117,-500, less a recited down payment of $23,500, with the balance of $94,000 due on delivery. The record also reveals that Farm Credit delivered its check for $23,500 to Swisher, and its check for $101,343.75, which included a tax of $7,343.75, to Module. Swisher has possession of the truck under a lease agreement with Farm Credit.

Module did not pay Bruckner for either truck. On October 8, 1993, Bruckner instituted an action against Module, Swisher and Estelline to recover from Module, among other things, the value of the trucks when they were entrusted to Module, and, alternatively, to recover from Swisher and Estelline possession of the trucks or their values. On October 19, 1993, Module filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101–1174. Resultantly, Bruckner's action against Module was severed and it remains pending in the trial court.

Estelline answered, denying Bruckner's claim and alleging that it acquired the truck in good faith as a bona fide purchaser for value. Estelline also counterclaimed to secure from Bruckner the completion and delivery of the manufacturer's certificate of origin in order that it may register and license the truck and obtain a certificate of title.

No answer by Swisher appears in the record. Farm Credit filed a plea in intervention, alleging its purchase of the truck in good faith as a bona fide purchaser for value without knowledge that the sale by Module was in violation of any ownership rights of Bruckner. Farm Credit also sought from Bruckner the completion and delivery of the manufacturer's certificate of origin, and any other documents, in order that it may register the truck and obtain a certificate of title or, alternatively, its damages.

On March 7, 1994, Estelline and Farm Credit separately moved, with affidavits and documents, for summary judgment on identical grounds. They advocated the application of pertinent sections of the Texas Uniform Commercial Code Annotated (the Code) (Vernon 1991 & Supp.1995) to the fact situation, because the purchase of each truck was a "first sale" under the Texas Certificate of Title Act (the Act), Texas Revised Civil Statutes Annotated article 6687–1 (Vernon 1977 & Supp.1995), and as a buyer in the ordinary course of business, each acquired title to the respective trucks at the time of purchase from Module.

Bruckner responded to each motion, attaching affidavits, documents and deposition testimony. Bruckner represented that neither Estelline nor Farm Credit established as a matter of law that its purchase of the truck was a "first sale," or that it was a bona fide purchaser for value, and that those unresolved fact issues precluded summary judgment.

On April 15, 1994, the trial court separately granted each motion for summary judgment by Estelline and Farm Credit, and rendered separate judgments ordering Bruckner to deliver to each of them the manufacturer's certificate of origin for the truck each purchased, together with all other documents required for the issuance of a certificate of title. These actions being severed, the rendition of both summary judgments disposed of these parties and issues, and the judgments merged to constitute a final judgment. *See H.B. Zachry Co. v. Thibodeaux,* 364 S.W.2d 192, 193 (Tex.1963); *Mitchell v. Amarillo Hosp. Dist.,* 855 S.W.2d 857, 863 (Tex.App.—Amarillo 1993, writ denied).

■ Bruckner attacks the judgment with three points of error, contending that Farm Credit did not conclusively establish that its purchase of the truck from Swisher was a "first sale," and that neither Farm Credit nor Estelline conclusively established that it was a buyer in the ordinary course of business. Because the trial court did not specify the ground or grounds relied upon in rendering either summary judgment, Bruckner, to be successful in its attack, must show that no ground in the motions for summary judgment is meritorious. *Cf. Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989); *Borg–Warner Acceptance Corp. v. C.I.T. Corp.,* 679 S.W.2d 140, 142 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.) (summary judgment will be affirmed on appeal if any of the theories advanced are meritorious).

■ To merit the summary judgment, Estelline and Farm Credit were required to conclusively prove all essential elements of their counterclaims by showing that there were no genuine issues of material fact and that they were entitled to judgment as a matter of law. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986). In determining whether they did so, we accept as true all evidence favorable to Bruckner, grant it every reasonable inference, and resolve any doubts in its favor. *Id.*

■ At the threshold of our consideration of the appeal, we are confronted with Estelline's assertion that Bruckner does not contend the sale of the truck to it was not a "first sale" under the Act and, therefore, Bruckner's sole issue is whether Estelline conclusively established it was a buyer in the ordinary course of business. Estelline has correctly noted that Bruckner's first point, as phrased, is that Farm Credit failed to conclusively establish that its purchase from Swisher was a "first sale" under the Act. However, in argument under its third-point contention that Estelline did not conclusively establish it was a buyer in the ordinary course of business, Bruckner specifically points out that one of the grounds upon which Estelline moved for summary judgment was that the sale by Module to Estelline was a "first sale," and then states, "The analysis that applies to Appellee Farm Credit also applies to Appellee Estelline." Given the Rule 74(p), Texas Rules of Appellate Procedure, mandate for the liberal construction of the briefing rules, which obligates us to observe not only the wording of the points of error but the argument under each point to determine the intent of the party, *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982), we deem the "first sale" question is presented in each transaction and should be addressed.

■ A resolution of Bruckner's first point of error, in connection with which the parties have joined issue on the question of the applicability of the Act, requires a consideration of the interplay between the Act and the Code. Section 1 of the Act specifies that its defined terms shall control in the enforcement and construction of the Act with respect, as material here, to a motor vehicle, defined in section 2 as "every kind of motor driven or propelled vehicle now or hereafter required to be registered or licensed under the laws of this state...." The registration requirement applies to a motor vehicle "used or to be used upon the public highways of this State." Tex.Rev.Civ.Stat.Ann. art. 6675a–2 (Vernon Supp.1995). Each of the two Mack trucks which are the subject of this litigation qualifies as a motor vehicle.

Pertinent to this litigation are several sections of the Act containing these definitions and provisions:

Sec. 4. The term "Owner" includes any person, firm, association or corporation other than a manufacturer, importer, distributor, or dealer claiming title to, or having a right to operate pursuant to a lien on a motor vehicle after the first sale as herein defined, except [Federal and State governments or agencies thereof] not required by law to register or license motor vehicles owned or used thereby in this State.

Sec. 7. The term "First Sale" means the bargain, sale, transfer, or delivery with intent to pass an interest therein, other than a lien, of a motor vehicle which has not been previously registered or licensed in this State or elsewhere; and such a bargain, sale, transfer or delivery, accompanied by registration or licensing of said vehicle in this State or elsewhere, shall constitute the first sale of said vehicle, irrespective of where such bargain, sale, transfer, or delivery occurred.

Sec. 8. The term "Subsequent Sale" means the bargain, sale, transfer, or delivery, with intent to pass an interest therein, other than a lien, of a motor vehicle which has been registered or licensed within this State or elsewhere, save and except when such vehicle is not required under law to be registered or licensed in this State; and

any such bargain, sale, transfer, or delivery of a motor vehicle after same has been registered or licensed shall constitute a subsequent sale, irrespective of where such bargain, sale, transfer, or delivery occurred.

Sec. 9. The term "New Car" means a motor vehicle which has never been the subject of a first sale either within this State or elsewhere.

Sec. 22. The term "Manufacturer's Certificate" means a certificate on form to be prescribed by the Department [of Highways and Public Transportation] showing original transfer of a new motor vehicle from the manufacturer to the original purchaser, whether importer, distributor, dealer, or owner, and when presented with an application for certificate of title must show thereon, on appropriate forms to be prescribed by the Department, each subsequent transfer between distributor and dealer, dealer and dealer, and dealer to owner.

Sec. 24. The term "Certificate of Title" means a written instrument which may be issued solely by and under the authority of the department, and which must give the following data....

Sec. 27. Before selling or disposing of any motor vehicle required to be registered or licensed in this State on any highway or public place within this State, except with dealer's metal or cardboard license number thereto attached as now provided by law, the owner shall make application to the designated agent in the county of his domicile or the county in which the vehicle is purchased or encumbered upon form to be prescribed by the Department for a certificate of title for such motor vehicle.

Sec. 33. (a) No motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title, at the time the motor vehicle is transferred, on a form prescribed by the Department....

Sec. 53. All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with.

Sec. 65. In case of any conflict between this Act and the Business and Commerce Code, Chapters 1 through 9, the provisions of the Business and Commerce Code control.

The Code, and the controlling effect given it by the Act's section 65, expressly governs some transactions in motor vehicles, and the Code's section 2.105 broad definition of "goods" clearly includes motor vehicles. *Associates Discount Corp. v. Rattan Chevrolet, Inc.*, 462 S.W.2d 546, 548–49 (Tex.1970).

■ In support of their contention that Module's sale to each of them was a first sale under the Act, Estelline and Farm Credit cite *Motor Inv. Co. v. Knox City*, 141 Tex. 530, 174 S.W.2d 482 (1943), as well as *Apeco v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.), which quoted from and relied upon *Motor Investment*. 506 S.W.2d at 715. At the time of the *Motor Investment* decision, the Act's section 7 definition of first sale was:

Sec. 7. The term "First Sale" means the bargain, sale, transfer, or delivery within this State with intent to pass an interest therein, other than a lien of a motor vehicle which has not been previously registered or licensed in this State.

Acts of April 11, 1939, 46th Leg., R.S., ch. 4, 1939 Tex.Gen.Laws 602, 603 (amended 1951) (current version at Tex.Rev.Civ.Stat.Ann. art. 6687–1, § 7 (Vernon Supp.1995)). Construing this section together with other sections of the Act, most of which are quoted above in their current language, the *Motor Investment* court, pointing out "it is only an 'owner' of a motor vehicle that is required to register such vehicle and secure a certificate of title therefor before selling the same," held

that every transfer of a motor vehicle, regardless of the number thereof, from manufacturer to dealer, dealer to dealer, and from dealer to "owner," as defined in the Act, constitutes a "first sale," and that it is not necessary that the vehicle be registered and a certificate of title thereto obtained as a condition precedent to the validity of such "first sale."

*Motor Inv. Co. v. Knox City*, 174 S.W.2d at 486. Continuing with its construction, the *Motor Investment* court further held that the transfer of the manufacturer's certificate is not essential to the validity of a first sale. *Id.*

Eight years after that decision, in 1951, the Legislature amended section 7 in 1951 by deleting the period after the word "State" and adding

or elsewhere; and such a bargain, sale, transfer or delivery, accompanied by registration or licensing of said vehicle in this State or elsewhere, shall constitute the first sale of said vehicle, irrespective of where such bargain, sale, transfer, or delivery occurred.

Acts of May 23, 1951, 52nd Leg., R.S., ch. 301, § 1, 1951 Tex.Gen.Laws 482, 482 (codified as Tex.Rev.Civ.Stat.Ann. art. 6687–1, § 7 (Vernon Supp.1995)). At the same time, the Legislature amended the Act's then existing section 8 definition of a subsequent sale to provide the current definition quoted above. *Id.*

Although the parties do not discuss, and research has not revealed a decision explaining, what effect, if any, the amended version of section 7 has upon the *Motor Investment* court's statement of the precise meaning of a first sale, it does not escape notice that facially, the statute seems internally contradictory. The first clause of the statute defines a first sale as the bargain, sale, transfer, or delivery of a motor vehicle "which has not been previously registered or licensed"; the second clause defines a first sale as the bargain, sale, transfer, or delivery of a motor vehicle "accompanied by registration or licensing" of the vehicle.

However, if the second clause is interpreted as requiring the registration or licensing of a new car as a condition precedent for a first sale, then section 7 has the identical meaning of section 8, which provides that a " 'Subsequent Sale' means the bargain, sale, transfer, or delivery . . . of a motor vehicle which has been registered or licensed. . . ." Considering that at the time section 7 was amended to provide the current version, section 8 was also amended, it is obvious by giving different meanings to the terms "first

sale" and "subsequent sale," the Legislature intended a distinction between them. Otherwise, to give the two terms the same meaning would be absurd, and the statute will not be interpreted so as to lead to an absurd result when there is an alternative, reasonable interpretation, *McKinney v. Blankenship*, 154 Tex. 632, 282 S.W.2d 691, 698 (1955), from the consideration which must be given the entire Act, its nature and object, and the consequences that would follow from each construction. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991).

It is at once apparent that by the introduction of the added second clause with the words "*and such a bargain, sale, transfer or delivery,*" the clause was predicated upon the first clause's definition of a first sale as the sale "of a motor vehicle which has not been previously registered or licensed in this State or elsewhere" (emphasis added). Then, logically, the following insertion of the phrase "accompanied by registration or licensing of said vehicle" was in recognition of the situation where the first sale of a new car was to an owner, the one required by the Act to register and license the vehicle, who at that time either registered and licensed the vehicle, or was accommodated by the common practice of dealers, upon the first sale of a new car to an owner, to charge the owner for, and to simultaneously secure, the registration and licensing of the new vehicle. This interpretation harmonizes and leaves intact the definitions of, and the distinction between, a first sale and a subsequent sale.

Thus, it seems clear that the 1951 amendment of section 7 did not alter the meaning of a first sale as articulated by the *Motor Investment* court. Indeed, nineteen years after the amendment, the Supreme Court, albeit not specifically referring to section 7, still adhered to its *Motor Investment* decision in stating, "The sale of such a [new, unregistered] vehicle from manufacturer to dealer, from dealer to dealer, and from dealer to 'owner,' as defined in the Act, is a 'first sale,' and the transfer of the manufacturer's certificate is not essential to the validity of the sale." *Associates Discount Corp. v. Rattan Chevrolet, Inc.*, 462 S.W.2d at 550. Other post-amendment decisions considering a

first sale are in harmony therewith. *See, e.g., Apeco Corporation v. Bishop Mobile Homes, Inc.*, 506 S.W.2d at 716; *Saylor Chevrolet Company v. Ellis*, 336 S.W.2d 798, 799–800 (Tex.Civ.App.—Eastland 1960, no writ); *Continental Credit Corporation v. Norman*, 303 S.W.2d 449, 451 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.).

Given the meaning of a first sale under section 7 of the Act as established in *Motor Investment* and *Associates Discount*, Module, as the outfitter of the Mack truck chassis, was not the owner of them; hence, Module was not required to register and license them, and the parties do not contend otherwise. Being entrusted with the chassis by Bruckner, Module was thereby given, in accordance with section 2.403(b) of the Code, the "power to transfer all rights of the entrustor to a buyer in ordinary course of business."

Consequently, by its summary judgment evidence, Estelline established that Module, authorized by the Code to transfer all rights of Bruckner to a buyer in the ordinary course of business, made a first sale of the vehicle to Estelline, the owner required by sections 27 and 33 of the Act to register and license the vehicle before disposition could be made of it, even though the manufacturer's certificate was not transferred. To this extent, Bruckner's first point of error is overruled.

■ However, the summary judgment record reveals a different transaction with respect to the vehicle purchased by Farm Credit. Before that purchase, Module and Swisher had executed a contract for the sale by Module, and the purchase by Swisher, which paid Module $23,500 of the $117,500 purchase price. Since Swisher was not an importer, distributor, or dealer, the record fails to show why Swisher did not become the owner of the vehicle pursuant to section 4 of the Act, and was required, by sections 27 and 33 of the Act, to apply for a certificate of title to the vehicle before a sale or disposition of it could be made. There is no showing of any resolution of the contract of sale and purchase between Module and Swisher or any transfer of the vehicle by Swisher. Instead, the record evinces that on June 29, 1992,

Module and Farm Credit executed a contract for the sale by Module, and the purchase by Farm Credit, of the same vehicle for delivery to Swisher. The record also reveals Farm Credit's payment of $23,500 to Swisher and the balance of the purchase price to Module, and the leasing of the vehicle by Farm Credit to Swisher. In this state of the summary judgment record, Farm Credit has not established as a matter of law that its purchase of the vehicle was a first sale. To this extent, Bruckner's first point of error is sustained.

■ By its second and third points of error, Bruckner contends that the trial court erred in granting summary judgment for Farm Credit and Estelline, respectively, because material issues of fact exist as to whether each knew that its purchase of the truck was in violation of its, Bruckner's, ownership rights. In this regard, the Code's section 1.201(9) defines "Buyer in ordinary course of business" as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind.…" The meaning of "good faith," as defined in the Code's section 1.201(19), is "honesty in fact in the conduct or transaction concerned." And the parties accept that Module, having been entrusted with the truck chassis by Bruckner, possessed the power given by section 2.403(b) of the Code to transfer all of Bruckner's rights to a buyer in the ordinary course of business.

Consistent with the principle that all evidence favorable to Bruckner, the non-movant, must be accepted as true, with every reasonable inference and doubt resolved in its favor, *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993), Farm Credit did not establish as a matter of law that it was a buyer of the truck in the ordinary course of business. Farm Credit's failure of its summary judgment evidence to establish its purchase of the vehicle was a first sale leaves unresolved the material fact issue whether it was a first sale or a subsequent sale which, under section 53 of the Act, was void for failure to comply with the provisions of the Act. *See Apeco Corporation v. Bishop Mo-*

*bile Homes, Inc.*, 506 S.W.2d at 715. Bruckner's second point of error is sustained.

To be entitled to the summary judgment, Estelline had the burden to prove it was a buyer in the ordinary course of business. The affidavit of Estelline's manager, Charles Moore, who signed the contract for sale by Module and purchase by Estelline, details the transaction. The only reference in the affidavit concerning the requirement that a buyer in the ordinary course of business be "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest therein of a third party," is Moore's conclusional statement that "[n]either Estelline nor Affiant had or now has any knowledge that the sale to Estelline by Module Truck Services, Inc. was in violation of any ownership or other rights of Bruckner Truck Sales, Inc." However, the statement is immediately preceded by his statement that "Estelline has made demand upon Bruckner truck Sales, Inc. to complete and deliver to Estelline the original Manufacturer's Certificate of Origin for a Vehicle and all other documents required by the County Tax Assessor/Collector so that the Module Truck can be registered and licensed and an original Certificate of Title issued to Estelline."

Moore does not explain either why or when Estelline made demand upon Bruckner for the manufacturer's certificate if, indeed, neither Estelline nor he "had nor now has any knowledge" that the sale was in violation of Bruckner's ownership or other rights. The lack of explanation is crucial in light of Module's acknowledgment in the Body Builder's Receipt that the vehicle remains the property of Bruckner, the averments in the affidavit of Mike Carlisle, a salesman who approved the contract for Module, and the excerpt from the deposition of James Westbrook, a representative of Module. Carlisle averred that he made no representation, nor implied, that Module had title to the truck, or that Module was a dealer or franchise for Mack trucks, and further averred that the truck had the Mack emblem/label, and that it was obvious the only Mack truck dealer in the area, Bruckner, owned the truck. Westbrook confirmed that he "advised people that they

would get the M.S.O.'s when the *dealer* had been paid (emphasis added)."

With the record in this state, there remains at least the material fact issue whether Estelline was without knowledge that the sale to it by Module was in violation of the ownership rights of Bruckner. As a result, Estelline failed to establish its right to summary judgment. Bruckner's third point of error is sustained.

The summary judgment record is akin to that in *Associates Discount*, where the Supreme Court said the question whether the sale was in the ordinary course of business is a mixed question of law and fact, and cannot be resolved in a summary judgment proceeding without information concerning all the circumstances of the sale. 462 S.W.2d at 550. Here, too, the lack of all the circumstances of the sales in the summary judgment record does no more than raise doubt as to the facts and, in that situation, summary judgment is not to be granted. *In re Price's Estate*, 375 S.W.2d 900, 904 (Tex. 1964).

Accordingly, the summary judgment is reversed and the cause is remanded to the trial court.

DODSON, J., concurs.

BOYD, J., dissents.

DODSON, Justice, concurring.

I agree that transactions between Module and Estelline, and Module and Farm Credit were not "second sale" under the Certificate of Title Act, that each transaction is governed by the Texas Commerce & Business Code Ann. section 2.403(b) and section 1.201(9) (*i.e.*, definition of "buyer in the ordinary course of business"); and that Estelline and Farm Credit failed to conclusively establish that they are "buyers in the ordinary course of (in) business." I agree that summary judgment should be reversed and the cause should be remanded to the trial court.

BOYD, Justice, dissenting.

I respectfully dissent from the opinion of the majority and would affirm the judgment of the trial court. The heart of Bruckner's first point is that the sales by Module were void as to Bruckner because they violated the Certificate of Title Act (the Act), Tex.Rev. Civ.Stat.Ann. art. 6687-1 (Vernon 1977 & Supp.1995), specifically section 33 of that Act. Bruckner correctly observes that failure to register or obtain a certificate of title does not invalidate a "first sale" under the Act. *Motor Investment Co. v. Knox City*, 141 Tex. 530, 174 S.W.2d 482, 486 (1943).

I agree with the majority that the sale by Module to Estelline was a first sale and as such failure to register or obtain a certificate of title for that vehicle did not violate the Act. I cannot, however, agree with the majority's conclusion that the contract between Module and Swisher made Swisher an "owner," and was, impliedly, a first sale. From this the majority must draw the conclusion that a question of fact exists about whether the sale from Module to Farm Credit [1] was a "subsequent sale" and consequently violative of the Act.

There are two reasons I am unable to accept the majority's reasoning. First, the contract between Module and Swisher was not a sale. This May 29, 1992 contract established a purchase price of $117,500 with delivery due on October 1, 1992. Swisher paid only $23,500 of the purchase price. Just over one month before delivery was due under this contract, Module entered into another contract with Farm Credit to sell the same truck on essentially the same terms and with delivery due on October 15, 1992. I do not believe that the executory contract between Module and Swisher made Swisher an "owner" as defined by the Act. Swisher did not, and could not, claim title to, or have a right to operate pursuant to a lien on the truck based on this executory contract. Without such a claim or right, Swisher did not become an "owner" under the Act.

---

1. Possibly explaining appellant's belief that the sale to Farm Credit was a subsequent sale is the statement in appellant's brief that "Swisher entered into a sales contract with [a]ppellee Farm Credit." The contract by which Farm Credit agreed to purchase the truck in issue was reduced to writing and appears in the record. That contract clearly states that it is between Module and Farm Credit.

Secondly, the Act does not define "subsequent sale" as any sale after a first sale but rather as any sale "after [the vehicle] has been registered or licensed." The opinion in *Motor Investment* broadened this definition to include the sale of a vehicle that "should, in law, have been registered." 174 S.W.2d at 486. It is undisputed that the truck was not registered before the sale to Farm Credit. Nor was Swisher required to register the truck before Module's sale of it to Farm Credit because Swisher could not use or intend to use the truck upon the public highways before it was delivered. *See* Tex.Rev. Civ.Stat.Ann. art. 6675a–2(a) (Vernon Supp. 1995) (defining vehicles required to be registered). I believe that Farm Credit established that the sale by Module and purchase by it was a first sale and not a subsequent sale in violation of the Act. I would overrule appellant's first point of error.

In response to Bruckner's second and third points, the majority begins by correctly stating the dispositive question as whether material issues of fact exist on the question of whether Farm Credit or Estelline knew that their purchases were in violation of Bruckner's ownership rights. However, in addressing this question the majority discusses only evidence supporting appellees' knowledge of the existence of Bruckner's ownership rights, rather than evidence that the sales violated those rights.

For example, the majority treats as contradictory the statements in Charles Moore's affidavit that Estelline made demand on Bruckner for delivery of the Manufacturer's Certificate of Origin and that neither he nor Estelline "had or now had any knowledge" that the sale was in violation of the rights of Bruckner. I fail to perceive the contradiction implied by the majority's opinion. Even if it were established as a matter of law that Estelline and Farm Credit knew that Bruckner owned the trucks, in my view that is not evidence that they knew the sales were in violation of Bruckner's ownership rights. Appellees could reasonably believe that Module held the trucks as Bruckner's consignee.

The other evidence cited by the majority, the affidavits of Mike Carlisle and James Westbrook, can only show knowledge of

Bruckner's ownership and not that Module's sales were violative of Bruckner's rights. Likewise, I cannot accept that the Body Builder's receipt could be evidence of appellees' knowledge that the sales were in violation of Bruckner's rights when there is nothing to show that appellees were aware of the existence or contents of that document. I would overrule appellant's second and third points of error and affirm the judgment of the trial court. To the majority's failure to do so, I respectfully dissent.

### ON MOTIONS FOR REHEARING

Farm Credit and Estelline have each filed a motion for rehearing seeking the reconsideration of the decision of a majority of the participating justices to reverse the summary judgment granted each of them. The motion filed by Estelline is a reiteration of its position on original submission and, considering that it has been fully addressed, a majority of the participating justices overrules the motion.

By its motion, Farm Credit points out that the lead opinion contains the determination that it had not established as a matter of law that its purchase of the vehicle was a first sale, but does not include a determination whether it was a buyer in the ordinary course of business; that the concurring opinion contains the determination that the sale was "not 'second sale,'" but that Farm Credit failed to conclusively establish that it was a buyer in the ordinary course of business; and that the dissenting opinion contains the determinations that its purchase was a first sale, and that it was not evidenced that its purchase was in violation of Bruckner's ownership rights. Farm Credit interprets the opinions as a majority holding that its purchase was a first sale, but not a majority holding whether it was a purchaser in the ordinary course of business.

With this premise, Farm Credit submits that the record contains conclusive proof that it was indeed a purchaser in the ordinary course of business. Farm Credit's argument is that, it being undisputed that Module was authorized and had the power to sell Bruckner's truck to it, the affidavit of Kathy Green, its Transportation Administrator who is cus-

todian of its business records, conclusively proves that it had no knowledge whatsoever that the sale of the truck was in violation of Bruckner's ownership rights.

■ Assuming Farm Credit's premise to be valid, Green's affidavit must be noticed. The only portion of it which relates to the question of Farm Credit's purchase in the ordinary course of business is this verbatim statement:

> Neither Farm Credit Leasing Services Corporation nor Affiant had or now has any knowledge that the sale to Farm Credit Leasing Services Corporation by Module Truck Sales, Inc., was in violation of any ownership rights of Bruckner Truck Sales, Inc.

However, the affidavit does not qualify as summary judgment evidence to establish that Farm Credit purchased the truck in the ordinary course of business, because it does not, as it must to be competent summary judgment evidence, "set forth such facts as would be admissible in evidence." Tex.R.Civ.P. 166a(f).

By failing to set forth admissible facts, the statement in the affidavit is nothing more than a legal conclusion, which is insufficient to establish the fact, in support of Farm Credit's motion for summary judgment, that it was a purchaser of the truck in the ordinary course of business. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984). Lacking the necessary factual specificity, the affidavit does not surmount the unresolved factual issue whether Farm Credit was without knowledge that the sale to it by Module was in violation of Bruckner's ownership rights, particularly since that factual issue was expressly presented to the trial court in the form of Module's acknowledgment of Bruckner's ownership of the truck, Carlisle's affidavit, and Westbrook's deposition, as discussed in the lead opinion, to defeat Farm Credit's motion for summary judgment. Consequently, a majority of the participating justices concludes that Farm Credit did not establish as a matter of law that it was a buyer of the truck in the ordinary course of business.

Given Farm Credit's reading of the differing views expressed in the three opinions issued in this cause on original submission, it alternatively objects to the original remand of the cause "in all things" on the theory that a majority of the participating justices concluded the sale of the truck to it was a first sale. Be that as it may, our review of the summary judgment consistent with controlling principles was limited in considering the issues and facts, which may be different upon a trial on the merits, and the determination by the majority that summary judgment was improper does not preclude the parties from asserting other and different positions upon remand. *Hudson v. Wakefield*, 711 S.W.2d 628, 630–31 (Tex.1986). Accordingly, a majority of the participating justices overrules Farm Credit's motion for rehearing in its entirety.

DODSON, J., concurs.

BOYD, J., dissents.

DODSON, Justice, concurring.

I agree that Estelline's motion for rehearing should be overruled. Also, I agree that Farm Credit's motion for rehearing should be overruled because Farm Credit does not present cause for the rendition of a different judgment than this Court's initial judgment in this cause.

Nevertheless, I adhere to my initial concurring opinion in the cause and agree that the trial court's summary judgment should be reversed and the cause should be remanded to the trial court for disposition for the reasons initially stated therein.